## HUMMEL–ROSS FIBRE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3879.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

J. Gordon Bohannan, of Petersburg, Va., for petitioner.

Howard P. Locke, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals and involves income taxes of the petitioner for the years 1927 and 1928. The decision of the board is reported in 31 B. T. A. 451.

The petitioner is a Virginia corporation engaged in the business of manufacturing wood pulp and other related products, with its principal office and its plants located at Hopewell, Va. The corporation was organized in 1920, with an authorized capital stock of $5,000,000, of which $3,000,000 was common and $2,000,000 7 per cent. cumulative preferred. There was issued and outstanding on December 21, 1923, $1,770,600 par value common stock and $728,100 par value preferred stock, all of which had been subscribed and paid for in cash, at par.

The petitioner began the construction of its pulp plant in 1921, and, in financing the construction of a paper mill and board mill in the year 1922, issued $1,000,000, par value, of 7 per cent. three-year mortgage bonds, maturing September 1, 1925.

On December 31, 1924, the petitioner was in a good financial condition and had begun to earn profits, but it had an aggregate current indebtedness of $1,094,000, in addition to its bonded indebtedness. At a directors' meeting held in February, 1925, a resolution was passed authorizing the petitioner's officers to take steps towards refinancing the bonded indebtedness. The resolution called for the voluntary surrender by the stockholders of 30 per cent. of the petitioner's common and all of its outstanding preferred stock. The stockholders complied with the resolution. The outstanding capital stock of the company at that time was $2,445,700. Thirty per cent. of this stock, or stock of the par value of $733,710, was surrendered to the petitioner. Of that amount, $111,697.79 was applied against an operating deficit of like amount, and $134,945 was used to pay the accumulated dividends on the preferred stock to January 1, 1925. This left a balance of $487,067.21, which was carried to surplus. During the period from January 1 to September 1, 1925, the petitioner had net earnings in the amount of $127,705.33, so that its surplus and undistributed earnings on September 1, 1925, amounted to $614,772.54. The book value of its stock on that date was $133.28 per share.

It was found that the bonded indebtedness could not be refinanced without offering some inducement to the purchasers of new bonds, and it was finally agreed that $250,000 par value of common stock held by the corporation was to be given as a bonus with the $1,000,000 par value 7 per cent. five-year bonds, and that the stockholders of the company would raise sufficient funds for liquidating the petitioner's floating indebtedness by subscribing for $698,850 par value second mortgage ten-year 8 per cent. bonds, the second mortgage bonds to carry a bonus of 20 per cent. of their par value in common stock. This arrangement was carried out, and the petitioner issued $25,000 second mortgage bonds and these bonds and $5,000 par value common stock were turned over to a finance company as commission for underwriting the $1,000,000 first mortgage bond issue.

For the $1,000,000 first mortgage bonds and the $250,000 par value stock sold with them, the petitioner received $1,000,000 cash, and for the $698,850 second mortgage bonds, and $139,770 par value stock sold with them, the petitioner received $698,850 cash. On September 1, 1925, after the issuance of the bonus stock sold with its first and second bond issues, the book value of the common stock was $111.35 per share and petitioner's buildings and equipment, all constructed or purchased new after its incorporation, were in good condition and had a depreciated cost value of $3,465,499.36.

Petitioner's stock was not listed on any securities market, was closely held, and no sales thereof sufficient to establish a market value were made at or near September 1, 1925. In the early part of the year 1926, the corporation being in a prosperous condition and showing good profit earnings, petitioner's president offered $100 a share for 1,000 shares of the stock, but could not buy them. On September 8, 1926, 250 shares of this stock were purchased at $98 per share.

Following the rehabilitation of its finances and the reduction of its stock liabilities, the petitioner retired its first mortgage bonds in 1926, 1927, and 1928, in the respective amounts of $300,000, $145,000, and $105,000. At the end of 1928, which is the last taxable year un-

der review, none of the second mortgage bonds had been retired.

In its income tax return for the years 1926, 1927, and 1928, respectively, petitioner deducted from its gross income the several amounts of $105,000, $54,333.33, and $36,500, representing amortization of the cost, as claimed by it, of its two bond issues, $144,700 for its second mortgage bonds and $250,000 for its first mortgage bonds. The Commissioner of Internal Revenue determined that each bond issue had been sold at par for cash and disallowed deductions of all amounts claimed as amortization. Other adjustments were made by the commissioner that are not at issue here, and, at the hearing before the Board of Tax Appeals, counsel for respondent conceded that certain allowances should be made. The board found that the bonds were sold at a discount equal to the value of the stock given as a bonus with the bonds, that such value was $40 per share, and that the taxpayer was entitled to amortize this discount over the life of the bonds.

The petitioner kept its books of accounts and made its returns upon the accrual basis.

The sole question presented is whether the petitioner corporation, in its refinancing operation in the year 1925, incurred a loss or gave a discount in the sale of its bonds by giving the common stock as a bonus, which loss or discount it was entitled to amortize over the life of the bonds, and, if it was so entitled to amortize this loss or discount, whether the amount fixed as the value of the common stock, as found by the board, was based upon substantial evidence.

The statutes and regulations involved are as follows:

Revenue Act of 1926, c. 27, 44 Stat. 9, 41 (26 USCA § 23 note):

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity;

"(2) All interest paid or accrued within the taxable year on its indebtedness."

U. S. C. Supplement II, title 26, § 986, Revenue Act of 1928, c. 852, 45 Stat. 791, 799 (26 USCA § 23 and note):

"§ 23. Deductions from gross income
"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness."

Treasury Regulations 69:

"Art. 545. Sale and retirement of corporate bonds.—* * *

"(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. * * *

"Art. 563. Sale of capital stock, bonds, and capital assets.—A corporation sustains no deductible loss from the sale of its capital stock. (See article 543.) If it sells its bonds at a discount, the amount of such discount is treated in the same way as interest paid, and if it retires its bonds at a price in excess of the issuing price, such excess may usually be deducted as expense. (See article 545.) * * *"

Treasury Regulations 74:

"Art. 68. Sale and retirement by corporation of its bonds.—* * *

"(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. * * *

"Art. 176. Sale of capital stock, bonds, and capital assets.—A corporation sustains no deductible loss from the sale of its capital stock. (See article 66.) If it sells its bonds at a discount, the amount of such discount is treated in the same way as interest paid, and if it retires its bonds at a price in excess of the is-

suing price, such excess may usually be deducted as expense. (See article 68.) * * *"

It is the contention of the petitioner that the stock, at the time it was given with the bonds sold, was worth 100 cents on the dollar; that this figure should be used in showing the amount of the discount at which the bonds were sold, and that there was no substantial evidence to sustain the finding of the board that at the time of the sale of the bonds the proper value of the stock that went with the bonds was $40 per share.

It is contended on behalf of the respondent that the stock that went with the bonds when sold had been voluntarily surrendered to the corporation by the stockholders, had cost the corporation nothing, and that the corporation realized par for the bonds sold and was entitled to no deduction for the stock given with the bonds. That, if entitled to any deduction, the $40 per share fixed by the board as the value of the stock was fixed upon substantial evidence and was a correct valuation.

We come first to consider the question whether the bonds were sold at any discount. If they were, the corporation had the right to amortize the amount of this discount over the period of the life of the bonds. This is specifically so stated in article 68 (3) (a) Treasury Regulations 74, above quoted, and in the case of Helvering, Commissioner, v. Union Pacific Railroad Co., 293 U. S. 282, 55 S. Ct. 165, 166, 79 L. Ed. 363, the Supreme Court said: "When the return is made on the accrual basis, expenses or obligations incurred by the taxpayer in connection with a bond issue, which are not discharged until the payment of the bonds at maturity, may properly be accrued or amortized over the period of the life of the bonds and allowed as annual deductions from gross income."

This has been, without exception, the holding of the courts. The evidence before the board proves conclusively that the bonds could not be sold at par and that the giving of the stock with the bonds amounted to a bonus that, in effect, was a discount. The stock unquestionably had some value, and, although surrendered by the stockholders to the corporation without cost to the corporation, was the property of the corporation. In giving the stock with the bonds the corporation sustained a loss, and we are of the opinion that the board was correct in finding that there was an amount which the taxpayer was entitled to amortize over the life of the bonds. In addition to this, there is no petition before us by which the respondent seeks to review this finding of the board.

We next come to consider the question as to whether the finding of the board fixing the value of the stock, at the time it was given with the sale of the bonds, at $40 per share was supported by substantial evidence. We think it was. The contention on behalf of the petitioner that the stock was worth par falls of its own weight. If the bonds secured by a lien on all the property of the company, property new and in good condition and of a value two or three times face value of the bonds, could not be sold for par, certainly the common stock of the company could not be said to be worth par. If the stock of the par value of $250,000 sold at par, then the $1,000,000 first mortgage 7 per cent. bonds that were sold with it only brought 75 per cent., yet all the property of the company was security for the bonds and the stock was not secured. A holding of this character would be contrary to all business experience and to all reason. At the time of the sale of the bonds, the time at which the value of the stock must be found, the finances of the company were in a precarious condition, no matter how bright the prospects for a profitable business might have been; bonds of the company were about to mature, and if the refinancing was not successful, it is a fair presumption that the common stock would have been worth nothing; the enterprise was a new one not yet established; the corporation had a large floating indebtedness in addition to the bond issues about to become due, and notwithstanding the fact that the book value of the stock was greater than par, it would be unreasonable to hold that the stock of a company in this uncertain condition was worth par. That the stock, prior to the successful refinancing arrangement, was not worth par is evident from a study of the evidence before the board, and, in fixing the value of the stock the board had the right to exercise its independent judgment. Unless the finding of the board, as to a

question of fact, is clearly erroneous and is not based upon any substantial evidence, the courts may not properly substitute their judgment for that of the board. The board was expressly created by Congress for the purpose of finding facts; is given that function, and in exercising it is not subject to review by the courts. In reaching a conclusion of the character of the one here in question, the duty of the board is more nearly related to that of a jury than it is to that of a ' court, and it is not . bound to accept the testimony of any witness or witnesses, but, as we said above, exercises its independent judgment. Baltimore & Ohio Railroad Co. v. Commissioner, 78 F.(2d) 460, decided by this court June 18, 1935.

As we said in the case of Anchor Co., Inc., v. Commissioner, 42 F.(2d) 99, 100: "What weight was to be given to these various matters * * * was for the Board to decide; and there is nothing to show that it abused its discretion or proceeded upon any erroneous view of the law. In such case, this court has no power to review the finding or to substitute its judgment for that of the Board. House & Herrmann v. Lucas (C. C. A. 4th) 36 F.(2d) 51; Guy v. Commissioner (C. C. A. 4th) 35 F.(2d) 139."

This rule is universally recognized by the courts and is stated with particular emphasis in Helvering, Commissioner, v. Rankin, 295 U. S. 123, 55 S. Ct. 732, 79 L. Ed. 1343, decided by the Supreme Court April 29, 1935.

It is well settled that where there is no open market for stock, it is proper to consider all the circumstances connected with the corporation which has issued the stock in determining its fair market value. Wright v. Commissioner (C. C. A.) 50 F.(2d) 727; Champlin v. Commissioner (C. C. A.) 71 F.(2d) 23. See, also, Houghton v. Commissioner (C. C. A.) 71 F.(2d) 656; O'Meara v. Commissioner (C. C. A.) 34 F.(2d) 390.

We are of the opinion that the value of $40 per share fixed, by the board was a fair one and based upon substantial evidence.

It is conceded on behalf of the respondent that the expense of 2½ per cent. of the first mortgage bonds paid by the taxpayer as commission · for the underwriting of the bonds is an expense

that the taxpayer should be allowed to . amortize. The order of the Board of Tax Appeals is affirmed.