## MANCHESTER BOARD & PAPER CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4138.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1937.

R. E. Cabell, of Richmond, Va. (Henry C. Riely and McGuire, Riely & Eggleston, all of Richmond, Va., on the brief); for petitioner.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Upon the former appeal in this case, Manchester Board & Paper Company v. Commissioner (C.C.A.) 74 F.(2d) 838, as in this appeal, the question was whether the sum of $58,000 received by the taxpayer in the year 1928 for the relinquishment of its rights as lessee of certain land and certain water power in Richmond, Va., was entirely profit, or whether on the other hand the property had a value on March 1, 1913, equal to or in excess of the sum paid for it in 1928, so that no taxable income accrued to the taxpayer as the result of the transaction in the latter year. The lease of the property was made on December 4, 1865, for the term of fifteen years from October 1, 1863. The annual rental was $1,200, and the lease provided that at the end of the term it should be renewed for a like period of fifteen years, and so on at the end of each successive term, with the condition that upon the expiration of any term, the lessor might demand an increased rental which the lessee should pay or else surrender the lease and the improvements to the lessor upon payment by the

latter of the value of the improvements. The lease was renewed from term to term as agreed at the same rental, and in 1909, during the term beginning October 1, 1908, the taxpayer acquired the entire property and all the rights of the lessee for $25,000. In 1923 the lease was renewed for an additional term of fifteen years at the increased rental of $4,000 per annum. In 1928, after litigation and arbitration between the parties, the lease was canceled and the taxpayer received $70,000 from the lessor, of which $12,000 was paid for the hydro plant and $58,000 for the water rights.

The Commissioner of Internal Revenue determined that the entire sum of $58,000 was profit in the taxpayer's hands and added that sum to its taxable income for the year 1928. The taxpayer took the matter before the Board of Tax Appeals, where conflicting testimony was given as to the value on March 1, 1913, of the water rights under the lease. On behalf of the taxpayer an estimate of $75,000 and on behalf of the Commissioner estimates of $10,000 to $13,000 were given, but they seem to have been based on the assumption that the lease would continue indefinitely at the same rental. The Board made no finding of fact as to the value of the water rights under the lease on that date, holding that it was immaterial to the decision of the case because the taxpayer had not shown either the existence or the value in 1913 of any rights sold by it in 1928; that even if the lease had a value on March 1, 1913, in excess of the annual rental, this element of value disappeared at the end·of the fifteen-year term then running because the lessor could then increase the rent; and that the taxpayer had failed to show the separate value of the renewal privilege. Hence the Board concluded that for the purpose of computing the taxpayer's income in 1928, the rights of the lessee under the lease which were then sold must be considered to have been without value in 1913.

The taxpayer filed a petition for review in this court, and we concluded that the course of the proceedings before the Commissioner and the Board was such as to lead the taxpayer to suppose that a separate valuation of the renewal privilege was not required; and that there was substantial evidence tending to show that it had some value in 1913, because the rental during a substantial part of the period covered by the lease was less than the actual value of the water rights and the ·right of the lessor to increase the rental at the expiration of any term was restricted by the obligation of the lessor to pay for the improvements if the lessee should then choose to surrender the lease. We therefore remanded the case to the Board in order that the taxpayer might have an opportunity to prove what value, if any, the renewal privilege had on the basic date.

At the rehearing of the issue before the Board the taxpayer produced three hydraulic engineers as expert witnesses, two of whom had been members of the arbitration board that valued the water rights in 1928 at $58,000. One of them fixed the value of these rights in 1913 between $85,000 and $90,000, another at $70,000, and the third at not less than $80,000 nor more than $100,000. The Commissioner offered no new evidence. The Board made the finding of fact that the renewal privilege of the lease had no fair market value on March 1, 1913. The Board referred to the conflicting evidence taken at the previous hearing and to the determination of the Commissioner and rejected the expert opinions of value offered by the taxpayer because they were based upon certain assumptions of fact that were not justified in its opinion by the evidence. These assumptions were: (1) That the lease called for 100 horse power; (2) that the cost of the next cheapest method of producing power, by comparison with which the experts fixed the value of the water rights under the lease, would remain constant throughout the years; and (3) that the rental prevailing in 1913 would not be thereafter increased.

It would be difficult to conclude that the experts were not justified in using the first two assumptions of fact as the basis for their opinions. For a long time the lessee had actually used more than 100 horse power without objection on the part of the lessor, and the arbitrators had decided in 1928 that the lessee was entitled to 100 horse power under the lease. As to the second assumption of fact; there was of course no certainty that the cheapest form of power in 1913 would remain the cheapest in the succeeding years, but this was a question that called for expert judgment and there was no evidence

that the expert opinion was wrong. But when we come to the third assumption of fact, that the 1913 rental would continue to prevail, the error is manifest. There was not only no certainty in 1913 that the rental of $1,200 per annum would not be increased in the future, but as a matter of fact it was increased to $4,000 per annum in 1923. The factual basis for the expert opinion was therefore fallacious in an important element. It is true that the findings of the arbitrators in 1928 indicated that the rent was still below the actual value of the water rights, and this circumstance may be attributable to the obligation of the lessor to pay for the improvements on the property if the lessee should decline to renew the tenancy at the expiration of any period in case of an increase in rent. Hence it may be that the renewal privilege had some substantial value in 1913; but to fix the value of the privilege in 1913 upon the assumption that the rent would not be increased at all in the future was so obviously at variance with probabilities as to deprive the calculations of the experts of any claim to accuracy.

Under these circumstances we can not say that the Board's rejection of the experts' testimony was unjustified, and since the burden of proof rested upon the taxpayer to show that the determination of the Commissioner was wrong, the decision of the Board must be affirmed. While the presumption that the determination of the Commissioner is right is simply procedural and can not survive the production of evidence tending to show the determining fact, nevertheless the taxpayer's evidence may itself contain a challenge to the taxpayer's theory and furnish the material for destructive analysis. See Crowell v. Commissioner (C. C.A.) 62 F.(2d) 51; Lunsford v. Commissioner (C.C.A.) 62 F.(2d) 740, 742.

We have, therefore, no occasion in this case to consider the question as to which some uncertainty has arisen, whether a rejection by the Board of uncontradicted testimony must, under all circumstances, be sustained. See Anchor Co. v. Commissioner (C.C.A.) 42 F.(2d) 99; Hummel-Ross Fibre Corp. v. Commissioner (C.C.A.) 79 F.(2d) 474; Tracy v. Com'r (C.C.A.) 53 F.(2d) 575; Grand Rapids Store Equip. Corp. v. Com'r (C. C.A.) 59 F.(2d) 914; Bonwit Teller &

Co. v. Com'r (C.C.A.) 53 F.(2d) 381, 82 A.L.R. 325; Uncasville Mfg. Co. v. Com'r (C.C.A.) 55 F.(2d) 893; Am-Plus Storage B. Co. v. Com'r (C.C.A.) 35 F.(2d) 167; Keystone Steel & Wire Co. v. Com'r (C.C.A.) 62 F.(2d) 458; Gloyd v. Com'r (C.C.A.) 63 F.(2d) 649; Emerald Oil Co. v. Com'r (C.C.A.) 72 F.(2d) 681; Wyoming Inv. Co. v. Com'r (C.C.A.) 70 F. (2d) 191; Boggs & Buhl, Inc., v. Com'r (C.C.A.) 34 F.(2d) 859; Pittsburgh Hotels Co. v. Com'r (C.C.A.) 43 F.(2d) 345; Nichols v. Com'r (C.C.A.) 44 F.(2d) 157; Fidelity Title & Trust Co. v. Com'r (C. A.) 64 F.(2d) 52; Tex-Penn Oil Co. v. Com'r (C.C.A.) 83 F.(2d) 518, certiorari granted Helvering v. Tex-Penn Oil.Co. 57 S.Ct. 28, 81 L.Ed. ——, affirmed 57 S. Ct. 569, 81 L.Ed. ——; Belridge Oil Co. v. Com'r (C.C.A.) 85 F.(2d) 762.

Affirmed.