## HELLEBUSH v. COMMISSIONER OF INTERNAL REVENUE.

No. 6254.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1933.

Frank S. Bright, of Washington, D. C. (H. Stanley Hinrichs, of Washington, D. C., on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (G. A. Youngquist, Sewall Key, C. M. Charest, and Thos. F. Callahan, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Petition by F. A. Hellebush to review the decision of the Board of Tax Appeals (24 B. T. A. 660) affirming the action of the Commissioner of Internal Revenue in assessing on redetermination against him as the transferee of the Blackburn Varnish Company deficiencies in income and profits taxes in the sum of $12,303.42 for the period from January 1, 1927, to April 19, 1927.

The case is before us upon the findings of fact by the Board. The Blackburn Varnish Company, an Ohio corporation, had for many years prior to the taxable year 1927 conducted a successful business. In the spring of that year its stockholders decided that they would quit business and liquidate the corporation. The nephew of one of its stockholders was an official of the Cook Paint & Varnish Company, a Missouri corporation. Through this nephew negotiations were opened for its sale to the Cook Company, which negotiations were thereafter carried on on behalf of the Blackburn Company by its president, Hellebush, and its secretary-treasurer, Lippleman. The negotiations finally resulted in Cook, president of the Cook Company, coming to

Cincinnati, the home office of the Blackburn Company, where the deal was closed on April 20, 1927, and on that date the following steps were taken to consummate it:

First, there was a special meeting of all the stockholders of the Blackburn Company in person or by proxy at which a resolution was unanimously adopted authorizing the dissolution and liquidation of the company and the conveyance of its assets to Hellebush and Lippleman as trustees for the stockholders with full powers to dispose of the company's property. The resolution further directed these trustees after "final liquidation" and deduction of expenses to distribute all remaining property or proceeds in kind pro rata to the stockholders and contained an instruction to the officers of the company to take the necessary steps to procure its dissolution and the conveyance of its property to the trustees.

Second, following the stockholders' meeting on the same day, the officers of the Blackburn Company "in consideration of the sum of one dollar ($1.00) and other good and valuable considerations" executed a bill of sale of all the personal property of the Blackburn Company to the above named trustees for the stockholders, and the corporation by its proper officers likewise on the same day executed and delivered to these trustees, designating them as trustees for the stockholders, its deed conveying to them its real estate in fee simple.

Third, on the same day an agreement was executed for the sale to the Cook Company of all the assets to which Hellebush and Lippleman, as trustees for the stockholders, had received title from the Blackburn Varnish Company. It was signed by the trustees and by Cook, president of the Cook Company, and by the Southern Ohio Savings Bank & Trust Company, escrow agent. The instrument recited that the trustees agreed to convey all property of whatever kind or nature' which they had received from the Blackburn Company except cash and accounts and bills receivable and further recited the concurrent delivery of a deed to the real estate and of an instrument of conveyance of all other property to the escrow agent for which a deposit of the sum of $100,000 on the purchase price was made. The Cook Company agreed to use reasonable diligence to collect the outstanding accounts and bills receivable and to account weekly therefor to the trustees.

The entire consideration paid by the Cook Company was $269,175.82. Existing liabilities against the Blackburn Company,

amounting to $9,000, were paid by the trustees prior to the dissolution of the Blackburn Company which took place on June 2, 1927.

Respondent fixed the capital gain accruing to the seller on these transactions at $85,530.86, being the difference between the selling price of $269,175.82 and the book value of the assets sold, $183,644.96. The tax on the capital gain was ascertained to be $12,303.42 and is the amount in dispute. Petitioner concedes that if the Blackburn Company is liable for the tax he is liable as a transferee.

■ Sections 213 and 233 of the Revenue Act of 1926, 44 Stat. 9, ch. 27 (26 USCA §§ 954, 985) provide that the gross income of corporations shall include gains derived from sales of, or dealings in, property. The applicable Treasury ruling is article 548 of Regulation 69, printed in the margin.[1] The provisions of this Regulation have been incorporated in the regulations for all of the Revenue Acts since the Act of 1918. Congress has not seen fit to change it and we think it should now be given effect. Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256; Universal Battery Co. v. U. S., 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051. It has been specifically upheld in Taylor Oil & Gas Co. v. Comm'r, 47 F.(2d) 108 (C. C. A. 5).

So the question here is, whether under this regulation when applied to the facts above set forth, there was a distribution of the assets of the Blackburn Company in kind to its stockholders upon dissolution and a sale of the assets by the stockholders through the trustees to the Cook Company, or whether the sale should be treated as a sale by the corporation.

■ We think it is clear that there was no distribution in kind, in the sense of a division, of the assets of the Blackburn Company to its stockholders on April 20, 1927, the date of the resolution appointing the trustees for the stockholders. Neither was there any distribution in kind to the stockholders "upon dissolution" which took place on June 2, 1927, by the filing of a certificate of abandonment

---

[1] "Art. 548. Gross income of corporation in liquidation.—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See section 282 and articles 1293 and 1294.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however they may have appreciated or depreciated in value since their acquisition."

or dissolution with the secretary of state of Ohio as provided by section 8741 of the Ohio General Code. Moreover the stockholders did not have power to appoint trustees to settle the affairs of the Blackburn Company and divide its property among the stockholders, until after the formal dissolution on June 2, 1927. See section 8742, Ohio General Code, supra. Until that date the Blackburn Company, like corporations generally, had exclusive power to act for itself. The stockholders' resolution of April 20, 1927, seemed to recognize this for it undertook to authorize and direct the officers of the Blackburn Company to take such legal steps as were necessary and proper to procure its dissolution. The utmost that can be said for this resolution is that it constituted an agreement between the stockholders upon a procedure with which they were themselves contented and through which the Blackburn Company could sell its property. However satisfactory and unobjectionable this arrangement may have been as between themselves [Chattanooga Savings Bank v. Brewer, 9 F.(2d) 982, 989 (D. C.)] it could not impair the right of the Commissioner to challenge its validity for purposes of taxation. The law will look through forms to substance [U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Board v. Comm'r, 51 F.(2d) 73, 75 (C. C. A. 6)] and will recognize the outstanding fact, that the Cook Company had thereby acquired the property and assets of the Blackburn Company just as was contemplated before the stockholders' meeting on April 20th. We think that this was a sale by one company to the other upon the profits of which the government was entitled to its taxes.

The order of the Board of Tax Appeals is therefore affirmed.