## TRIPPETT et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9731.

Circuit Court of Appeals, Fifth Circuit.

April 1, 1941.

Rehearing Denied May 14, 1941.

HUTCHESON, Circuit Judge, dissenting.

Conan Cantwell and W. H. Sanford, both of Dallas, Tex., for petitioners.

Lee A. Jackson, Sewall Key, and F. E. Youngman, Sp. Assts. to Atty. Gen., Samuel O. Clark, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D.C., for respondent.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The Texota Corporation was incorporated in 1931 under the laws of the State of Texas. Its charter authorized the issuance of 750 shares of no par value stock divided into equal parts of Class A and Class B shares. On April 5, 1934, R. G. Trippett and A. H. Meadows jointly acquired a majority of the Class B shares and thereafter caused themselves to be elected directors of the corporation. Later they held a directors meeting and elected themselves president and secretary-treasurer respectively of Texota Corporation. In the meantime three producing oil wells had been drilled on the oil and gas lease owned by the corporation.

There was much dissension among the stockholders of the corporation and on December 17, 1934, after many offers and counter offers had passed, Trippett and Meadows sent a telegram to the "opposition stockholders" offering to buy their shares of Class A and Class B stock. The offer was accepted by the "opposition stockholders" on December 19, 1934, and the stock was purchased through the Peoples National Bank of Tyler, Texas. Trippett and Meadows thus became owners of all the capital stock of Texota Corporation. They intended to later liquidate the corporation.

On December 19, 1934, through one S. A. Cochran, a broker, Trippett and Meadows learned that Rancho Oil Company was interested in purchasing the oil and gas lease owned by Texota, and that it was willing to pay $180,000 for the lease if an additional well was drilled. Through Cochran a meeting between the Rancho representative and Trippett and Meadows was arranged for December 20th. The meeting was held and the terms of the sale were agreed upon. It was agreed that Rancho Oil Company would pay $165,000, this being the $180,000 less a $5,000 broker's commission, and $10,000, the cost of drilling an additional well.

On December 31, 1934, the stock which had been forwarded to the Peoples National Bank was paid for with money borrowed from that bank by Trippett and Meadows. On the same day all certificates of stock of Texota Corporation were cancelled and two new certificates, one for all the Class A stock and one for all the Class

B stock, were issued in the name of Meadows, for himself and Trippett. These new certificates were pledged to the bank as security for the Trippett and Meadows loan.

■ After Trippett and Meadows had agreed to buy the stock, they had their lawyers prepare a paper for the liquidation of Texota Corporation. This instrument, which was a consent of stockholders to liquidate the corporation, was signed on December 27, 1934, by Meadows as sole stockholder, and was certified to by the president and secretary of the corporation. In some manner this paper went to the files of Rancho Oil Company instead of to the files of the Secretary of State. Never having been filed in the office of the Secretary of State the paper was without legal effect.

On January 5, 1935, Texota Corporation executed a conveyance of its oil and gas lease to Meadows for a recited consideration of "$10.00 and other valuable considerations". As a matter of fact no consideration actually passed from Meadows to the corporation. On the same day Meadows assigned the oil and gas lease to Rancho Oil Company, and attached to the assignment a draft for $165,000 which was paid on January 7, 1935. On the day the draft was paid the notes made by Trippett and Meadows to the Peoples National Bank for the money borrowed to purchase the stock were paid in full. Texota Corporation was formally dissolved on August 14, 1936, by the filing of a consent to dissolution with the Secretary of State. Texota Corporation wound up its business affairs sometime in 1935 and distributed the remainder of its assets to Trippett and Meadows.

The Commissioner determined that Texota Corporation realized a profit from the sale of the oil and gas lease to Rancho Oil Company, and determined deficiencies in income and excess profits taxes for the tax year ending July 31, 1935, in the respective amounts of $20,773.61 and $7,223.96. On petitions of Texota Corporation, Trippett, and Meadows, the Board of Tax Appeals entered decisions sustaining the deficiencies and holding Trippett and Meadows liable for the taxes as transferees of the dissolved corporation. Trippett et al. v. Commissioner, 41 B.T.A. 1254.

■ In his letter notifying Texota Corporation of the assessment of the deficiencies asserted against it, the Commissioner stated that he had found that there had been "no liquidating dividend declared or paid by the corporation prior to the sale" of the oil and gas lease, and that the sale to Rancho was a sale by Texota Corporation which resulted in profit to it and not to the individual stockholders. The determination of the Commissioner is prima facie correct and the burden is on the taxpayer to prove that his determination was erroneous. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848; Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Brown v. Commissioner, 5 Cir., 22 F.2d 797.

■ Trippett and Meadows were officers and directors of Texota Corporation. The oil and gas lease belonged to the corporation and not to Trippett and Meadows. The oil and gas lease had not been distributed to the stockholders when the contract of sale was entered into or when it was consummated, and since Trippett and Meadows, as officers and directors of the corporation, could not legally contract for the sale of the lease except as agents for the corporation, it necessarily follows that the sale contract was the contract of Texota Corporation, and that the profit resulting from the sale was profit of the corporation and properly taxable to it. MacQueen Co. v. Commissioner, 3 Cir., 67 F.2d 857; Taylor Oil & Gas Co. v. Commissioner, 5 Cir., 47 F.2d 108; Hellebush v. Commissioner, 6 Cir., 65 F.2d 902; Burnet v. Lexington Ice & Coal Co., 4 Cir., 62 F.2d 906.

Petitioners would seek to escape payment of the taxes for the reason that the corporation adopted a resolution on January 5, 1935, authorizing the president to transfer and convey its oil and gas lease to A. H. Meadows "upon such terms and for such consideration as to the President may seem proper * * *." To hold that the transfer of the lease to Meadows was a distribution in liquidation of the corporation would be to hold such distribution accomplished by intendment. Moreover, Trippett and Meadows had no right to deal with the corporate property as their own. Texota Corporation had not been dissolved or liquidated and they could only act as its agents. Cf. MacQueen v. Commissioner, 3 Cir., 67 F.2d 857.

The Board, upon the facts before it, properly found that the Commissioner's

finding that the sale contract was the contract of Texota Corporation was not overborne, and that the profit realized from the sale of the lease was taxable to it.

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

The Board correctly stated that the controlling question in this case is whether the contract of sale made by Meadows and Trippett with Rancho on December 20, 1934, was an agreement of Meadows and Trippett as sellers or was an agreement of Texota as seller, through them as its agents.

The facts as to this are undisputed, indeed stipulated. They show unequivocally: that all negotiations between buyer and seller were had with the understanding that it was a personal sale of Trippett and Meadows; that in the beginning they stated that they owned a one-fourth interest in the property, that they might consider selling it along with some other property, and that there was a possibility that they could acquire all of the interest in the property; that later they acquired all the stock; that the contract of sale was drawn between Trippett and Meadows individually as sellers and Rancho Oil Company as buyer; and that it was arrived at after sellers had stated, that the deal was being made by them individually, and that they intended to liquidate the corporation and then consummate the sale.

No contrary testimony or claim appears or is made. The opinion of the Board and of the court, that Texota, and not Trippett and Meadows, was the seller, is based upon the incorrect legal theory that though Trippett and Meadows were trying to contract for themselves, they could not do so since at the time the contract was made the corporation owned the property, the subject of the contract and they did not.

In Texas, and I believe generally, a person may make a valid contract to sell land which he does not then own but expects to acquire.[1] Since it was legal for Trippett and Meadows to do what they proposed to do, contract for the sale of the property of the corporation and agree to deliver it when the company had been liquidated by conveyance to them, and since upon the undisputed facts, they proceeded as they had agreed to do, by taking a transfer from the corporation in liquidation of their stock, I must respectfully disagree with the conclusion of the majority, that they were doing what the undisputed evidence shows they were not doing, contracting for Texota. For the same reason that the undisputed evidence shows they were, I must also disagree with the conclusion of the majority that the properties were not transferred to Meadows in liquidation of the company.

I therefore respectfully dissent from the judgment of affirmance.

---

[1] Hufstutler v. Grayburg Oil Co., 48 S.W.2d 591, Texas Commission of Appeals, approved by Supreme Court of Texas; Tison v. Smith, 8 Tex. 147; American National Bank of Wichita Falls v. Haggerton, Tex.Civ.App., 250 S. W. 279.