## COMMISSIONER OF INTERNAL REVENUE v. FALCON CO.

### No. 10011.

Circuit Court of Appeals, Fifth Circuit.

April 8, 1942.

Edward First, Sewall Key, J. Louis Monarch, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Leonard M. Levy, of Forth Worth, Tex., and Monte M. Lemann, of New Orleans, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The Commissioner determined deficiencies in income and excess profits taxes against the Falcon Company for the fiscal year which ended May 31, 1934. Falcon Company contested the Commissioner's determination, and the Board of Tax Appeals found the issues in favor of the taxpayer and entered decision accordingly. The findings and opinion of the Board are reported in full, and for this reason we will not give a detailed review of the facts in this opinion. Falcon Company v. Commissioner, 41 B.T.A. 1128.

Prior to February 23, 1934, Falcon Company owned working interests in eight oil and gas leases in Texas. Except for usual royalty reservations two of the leases were wholly owned by Falcon and six were jointly owned by Falcon and others. Contracts between co-owners of the six jointly owned leases provided that if any part owner received a bona fide offer of purchase which it desired to accept, it could require its co-owner or co-owners to either join in the sale or buy out its interest for an amount equal to its proportionate share of the offered price.

Early in February, 1934, a representative of Tide Water Oil Company of Houston began negotiation with Falcon Company for purchase of the eight leases. Tide Water made an offer, and Falcon Company communicated with the other co-owners of the six jointly owned leases. Thereafter, East

Texas Oil Refining Company, one of the co-owners, offered to buy Falcon's part interest in the six leases, and the full interest in the two leases which were wholly owned by Falcon. Negotiations continued and correspondence passed between the interested parties, but after several conferences the directors of Falcon Company decided that the company would not sell its interests in the leases to Tide Water or anyone else.

On February 23, 1934, a meeting of the stockholders of Falcon Company was held, and it was decided that the eight oil and gas leases would be distributed to the stockholders as a partial liquidating dividend. Pursuant to a unanimously approved resolution, the officers of the company executed an instrument of conveyance whereby Falcon Company conveyed to the stockholders its interests in the eight leases, one-third to Venita S. Weaver, one-sixth to Roy D. Golston, one-third to Herbert Oil Company of Texas, and one-sixth to First National Bank of Fort Worth, Trustee. The conveyance was complete and irrevocable and "without reservation, limitation, or condition of any nature, so as to vest in the assignees, absolute, unconditional, and unqualified title to and ownership of the property so conveyed." The transfer of the leasehold interests to the stockholders depleted Falcon Company's assets by sixty per cent, and accordingly the stockholders surrendered their capital stock of the total par value of $12,100 and new certificates of the total par value of $4,840 were issued to them. The capital stock of the corporation was thereby reduced sixty per cent in conformity with the liquidating dividend, and thereafter dividends were declared and paid on the new stock basis.

After the eight leases had been distributed as a liquidating dividend, the stockholders negotiated with the East Texas Oil Refining Company for the sale of their interests. At first Golston was reluctant to sell his share, but on March 2, 1934, Weaver, Golston, Herbert Oil Company, and First National Bank of Fort Worth, Trustee, entered into a formal contract with East Texas Company for sale of their respective interests in the eight leases. The formal assignment and conveyance to East Texas Company was executed by the owners on March 15, 1934, and the agreed cash purchase price and oil payments were paid by East Texas Company directly and separately to the four sellers in proportion to their respective interests in the properties conveyed.

The Commissioner contends here as he did before the Board that the basic terms of the sale of the leases to East Texas Company had been tentatively agreed upon by the Falcon Company before it made the liquidating distribution to the shareholders; that the distribution was nothing more than part of an anticipatory plan to avoid tax; that in substance there was a sale by the corporation; and that for tax purposes the sale should be deemed to be one made by Falcon Company, and the gains and profits taxed accordingly. Cases relied upon by the Commissioner to sustain his contention are readily distinguishable from the case at bar on their facts. Among the cases cited by the Commissioner are: Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L. Ed. 319; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Taylor Oil & Gas Co. v. Commissioner, 5 Cir., 47 F.2d 108; Embry Realty Co. v. Glenn, 6 Cir., 116 F.2d 682; Trippett v. Commissioner, 5 Cir., 118 F.2d 764.

Here the record shows no fraud, sham, or subterfuge, or use of mere form to hide the substance of the real transaction. It is exceedingly clear that Falcon Company had definitely decided not to sell the leases; that when the leases were distributed to the stockholders in partial liquidation of the corporation, there was no sale contract in existence; and that the conveyance of the leasehold interests by Falcon Company to the stockholders was bona fide, absolute, and unconditional. After the stockholders had acquired the properties in their own right, they negotiated for the sale of their interests as they had a right to do. Acting in their own right, voluntarily and without prior obligation, they entered into an independent contract for the sale of their interests for their own account and they received the proceeds from the sale separately and individually, and the corporation received no benefit of any kind, either directly or indirectly, from this transaction. Under the circumstances shown we agree with the Board of Tax Appeals that the sale was not made by Falcon Company, but was in truth and in fact a sale made by the four stockholders to whom the leases had been distributed. Cf. Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200.

The petition is denied and the decision of the Board of Tax Appeals is affirmed.