## COURT HOLDING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10976.

Circuit Court of Appeals, Fifth Circuit.

July 11, 1944.

HUTCHESON, Circuit Judge, dissenting.

Maurice Kay, of Washington, D. C., for petitioner.

Muriel S. Paul, Sewall Key, A. F. Prescott, and Harry Baum, Sp. Assts., to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Special Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

For the calendar year 1940 the Commissioner assessed additional taxes growing out of a failure of Court Holding Company to return a gain on a sale of real estate as realized by it, instead of by its stockholders who had returned it. A fraud penalty was also imposed. The Tax Court held that the sale was to be attributed to the corporation and upheld the tax, but that though an incorrect position in law had been taken by the corporation, there was no suppression of the facts, and a fraud penalty was not justified. The corporation is here contending that it does not owe the tax.

The fact as found by the Tax Court are fully stated in 2 T.C. 531. The Court Holding Company was a mere holding company, having as its only asset a building in Florida called Mayfield Court Apartments. Its only business was the leasing of this building. There were 50 shares of stock, owned 48 by Minnie Miller and 2 by her husband Louis Miller. He was president of the Company and their son Harry Miller was secretary. Minnie Miller was a director. The current lease was for three years, beginning October 1, 1938, and the rental was due $2,000 October 1, $1,000 December 15, $1,500 January 15, $2,000 February 1, $2,000 February 20, for each year. There was an initial deposit also of $2,000 to secure general performance of the lease. During the fall of 1939 the lessees Aaron and Regina Feiwish, and

a sister and her husband named Fine, began negotiations to buy the property. During February, 1940, Louis Miller, the corporation's president, and the Fines orally agreed on a sale at a price of $54,500, and on February 23 they met in the office of a lawyer employed by the Fines to make and execute a written contract, Harry Miller, the corporation's secretary, also being present. The attorney prepared a written contract, but it was never executed. The property had been bought during the depression at a low price at judicial sale, and the Millers were advised that if the corporation sold and realized the gain and then distributed it to its stockholders, very heavy and duplicated income taxation would result. On February 23rd they notified the Fines that the corporation could not consummate the sale for the reason that very large income taxes would result. That afternoon the three directors of the corporation met with their accountant, and in a formal directors' meeting resolved that the corporation should "declare a dividend payable in the assets of the corporation, in complete liquidation and surrender of all the outstanding corporate stock". A resolution was then passed declaring the dividend, "payable in all the assets of the corporation, (describing the building and its equipment), subject to a first mortgage * * * and a second mortgage * * * and further subject to a lease between the corporation and Aaron and Regina Feiwish * * * in complete liquidation and surrender of all the corporate stock of the corporation, held by Louis and Minnie Miller". A formal stockholders' meeting was then held in which the resolution of the directors was ratified and confirmed, Louis Miller and Minnie Miller both signing the minutes. Thereafter on the same afternoon the corporation executed its deed covering the property to Louis Miller and Minnie Miller, which was duly recorded. On February 26 the Fines' attorney on request of the Millers drew a new contract providing for the same purchase price and conditions that had been agreed on February 23, except for a correction in the balance due on one of the mortgages to be assumed, and this contract was executed by Louis and Minnie Miller as sellers and Mrs. Fine as purchaser. The contract recited the payment down of $1,000, and that if the title was approved other payments were to be made, and credit allowed for the $2,000 on deposit to secure the lease.

The Tax Court finds that the $1,000 paid down was the application of a check for $1,000 paid January 5 by Aaron Feiwish to the Millers, but whether originally as a loan or for rent is not stated. The $2,000 deposit to secure the lease also belonged to the lessees, and their consent to the surrender of the lease had to be obtained. The record is silent as to how these matters were arranged, but evidently the lessees and their sister, Mrs. Fine, had an understanding about them. Title was finally transferred by the Millers to Mrs. Fine on April 1, 1940. The corporation has owned no property since the transfer of its assets, and has done no business, but was not formally dissolved, the Florida law holding it intact for a time to settle its affairs.

The Tax Court concluded on these facts that the sale was really made by the corporation, that the transfer of the property to the stockholders "was in fact subject to the petitioner's prior agreement to sell, and the sale, although in form by the stockholders, was in reality in performance of the prior agreement". We think this conclusion not sustainable.

In Florida an agreement to sell land is unenforcible unless evidenced by a writing. Comp.Gen.Laws of 1927, § 5779, F.S.A. § 725.01. The $1,000 paid on January 5th, and finally applied on the purchase, as the tax court found, could not then have been a payment on a contract of purchase, because no agreement to sell had been reached till late in February; but if so considered, because later so applied with Feiwish's consent, under the Florida law a part payment would give no validity to an oral contract to sell land. Tate v. Jones, 16 Fla. 217; Williams v. Bailey, 69 Fla. 225, 67 So. 877; Maloy v. Boyett, 53 Fla. 956, 43 So. 243; Fireman's Fund Ins. Co. v. Craven, 101 Fla. 155, 134 So. 232. The corporation was never bound by any writing. It was free on February 23 to declare that it would not go forward with the sale, for any reason or no reason. It did so declare, and thereafter there was not even an oral contract. There was no sale agreement binding the property subject to which the Millers took title. The corporate minutes show that they took subject to two mortgages and the lease, and to nothing else. They were free to sell or not sell. They were free if they chose to propose, as they did, to sell on the same

terms which had been before discussed. Mrs. Fine was in nowise bound to buy, but she too was free so to agree.

As we see it, the controlling fact is that there was no binding agreement to sell made by the corporation, and even the oral agreement was called off. The Millers wished to sell the property and realize their gain. It could lawfully be done in either of two ways: 1. The corporation could sell and distribute the gain. Or 2. The corporation could liquidate, transfer the property to its stockholders, and they could sell. The tax consequences were more favorable under the latter plan. The Millers found this out in time, before the corporation became bound to sell, and followed the latter plan. The corporation was actually and fully liquidated. It had after February 23 neither property, business nor capital stock. This of course was all done to avoid heavy corporation taxes, but the purpose to escape or reduce taxation in making such a choice of procedure is not unlawful. The procedure actually followed is taxable by the law applicable to it. United States v. Isham, 17 Wall. 496, 21 L.Ed. 728; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Chisholm v. Commissioner, 2 Cir., 79 F.2d 14. This case is like Commissioner v. Falcon Co., 5 Cir., 127 F. 2d 277, rather than Trippett v. Commissioner, 5 Cir., 118 F.2d 764, 765. The Millers have paid taxes on the gain realized as individuals. The defunct corporation cannot rightly be resurrected to be taxed for a sale it did not make. The tax ought to be redetermined accordingly. The case is remanded to this end.

Judgment reversed.

HUTCHESON, Circuit Judge (dissenting).

This is another of those border line tax avoidance cases in which it is only by the skin of its teeth, if at all, that a family holding corporation has escaped taxes on a sale of its property by the device of a deed in liquidation to its two stockholders so that they in turn might deed it to the purchaser. The facts are fairly and fully set out in the opinion of the Tax Court, 2 T.C. 531. I will not restate them here. It is sufficient to say that it was in effect found with full support in the record, (1) that the taxpayer entered into an oral contract with the purchaser, with all of the terms of the sale agreed on, one of them being that a part of the rent already paid should be credited on the purchase price, (2) that, at the last minute, and admittedly for the sole purpose of avoiding taxes, it concluded to consummate the sale not by deeding the property direct to the purchaser, as it had at first planned, but by a deed in pretended liquidation to its two stockholders who were to carry out the corporation's contract by deeding it to the purchaser, and (3) that, using the stockholders as a conduit, it carried out its sale to the purchaser exactly as it had agreed to do.

Standing not as Falcon [1] did, with a finding of the Tax Court in its favor, but as Trippett [2] did, with a finding against it, petitioner insists that the undisputed facts established that the sale, which the Tax Court finds was made by the corporation, was in fact made by the stockholders, and that a judgment for the taxpayer is demanded. It points to the fact that though the negotiations for the sale were conducted by its stockholders in its name, and the sale was made to the purchaser on the same terms and conditions as those it had agreed to, no binding agreement for a deed and no deed to the purchaser was executed by taxpayer. Citing Commissioner v. Falcon, 5 Cir., 127 F.2d 277, it insists that the Tax Court has in effect affirmed what the courts have uniformly denied, that the motive of tax avoidance can make taxable a transaction that motive absent would be without tax consequences. Arguing that it had a right, to negotiate for the sale, to come up to the very point of closing, and then, not being legally bound to go forward, to decline to sell, it insists that it did actually decline to sell, and having done so, it was entirely competent for it to transfer property in liquidation to its stockholders and for them to negotiate with and sell the property to the same purchaser on the same terms and conditions. I agree with petitioner that this could have been done. I cannot agree that the record demands a finding that this was done. I think it fully supports the finding of the Tax Court that Mrs. Miller with her husband, the sole owners of the corporation, arranged for it to make a sale to the purchaser, and that it agreed to do so. As part of that arrangement, it was agreed that part of the money

---

[1] Commissioner v. Falcon, 5 Cir., 127 F.2d 277.

[2] Trippett v. Commissioner, 5 Cir., 118 F.2d 764, 765.

which had been paid the taxpayer as rent should be credited on the sale price and though the sale finally took the form of a deed in liquidation to her and her husband and a deed from them, this was not the substance of what occurred. This, as found by the Tax Court, was that the corporation should go ahead with the transaction as agreed, except that, instead of executing its own deed direct to the purchaser, it would make the sale through the medium and agency of its sole stockholders. Thus the title, passing first into them, could go through them as a conduit into the purchaser for the purpose of precisely carrying out the agreement, morally if not legally binding, which the taxpayer had made through their agency, and through their agency carried out.

It is settled law that neither the motive nor the effort to avoid tax consequences will of itself make a taxable transaction out of one which is not in law taxable, but evasion and avoidance are near allied, and thin partition walls their bounds divide.[3] The determination, therefore, whether a transaction of this kind was one of a real refusal of the corporation to sell, a real liquidation, a re-negotiation with the purchaser by the stockholders, or was a sham refusal, and a carrying out of the original plan through the stockholders as agents, presents a field for fact finding, a field in short in which the finding of the Tax Court is controlling. If the evidence showed only that the negotiations had been begun by the Millers on behalf of the corporation and had proceeded to the point of oral agreement, and that then it had been decided that the corporation would not make the deed, the Tax Court might have inferred as a fact that its subsequent action in deeding the property in liquidation and the action of its stockholders in selling to its customer was the result of a bona fide and complete abandonment by the corporation of its purpose to sell and a renewal of negotiations followed by a sale by the stockholders, or it might have inferred that these facts exhibited a purpose not to abandon the sale but to proceed with and accomplish it by a tax saving device. By either fact inference, this Court would have been bound, Cf. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239. But the

record shows more than this in support of the inference the Tax Court drew. It shows in addition that, as a part of the terms of the sale, the lease arrangements taxpayer had made were taken into account in the sale and that a part of the money paid to and received by the corporation as rental prior to the consummation of the sale was to be, and was, credited to the purchaser on the purchase price. Mrs. Miller so testified. No one disputed her testimony. Indeed, the testimony of the government agents as to what she told them corroborates it. I think, therefore, that it must be held not only that the evidence sustains the finding of the Tax Court, but that it would be hard under this record to sustain any other finding. I respectfully dissent from the judgment of reversal.

---

[3] Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Taylor Oil & Gas Co. v. Commissioner, 5 Cir., 47 F.2d 108; Embry Realty Co. v. Glenn, 6 Cir., 116 F.2d 682; Trippett v. Commissioner, 5 Cir., 118 F.2d 764.