**WICHITA TERMINAL ELEVATOR CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3408.

Circuit Court of Appeals, Tenth Circuit.

May 12, 1947.

Rehearing Denied June 9, 1947.

Second Petition for Rehearing Denied Aug. 20, 1947.

PHILLIPS, Circuit Judge, dissenting.

———◆———

Robert C. Foulston and John F. Eberhardt, both of Wichita, Kan. (George Siefkin, Samuel E. Bartlett, George B. Powers, Carl T. Smith, Stuart R. Carter, and Thomas E. Woods, all of Wichita, Kan., on the brief), for petitioners.

Harry Marselli, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., Robert N. Anderson and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The question presented is whether gain from the sale of certain properties was attributable to a corporation or to its former stockholders.

Section 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22, in material part, defines gross income to include gains, profits, and income derived

from trades, businesses, commerce, or sales, or dealings in real or personal property, growing out of the ownership and use of such property; also from the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever; section 111, 26 U.S.C.A. Int.Rev.Code, § 111, in material part, concerns itself with the method of computing gain from the sale or other disposition of property; and section 29.22, Treasury Regulation 111, provides in material part that no gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation.

The Wichita Terminal Elevator Company, a corporation organized under the laws of Kansas, conducted a grain elevator business at Wichita, Kansas. It owned and operated a terminal elevator in Wichita and four country elevators at other points in Kansas. L. H. Powell was its president and general manager. Powell and members of his immediate family owned a large part of the stock of the company. Powell was advanced in age and desired to sell the elevator properties. He discussed the matter with several persons, including Paul Ross. The first discussion with Ross took place on or about June 1, 1944. Ross was then interested in purchasing only the elevator and business at Wichita, but Powell advised him that his desire was to sell the other elevators too. Ross inspected the other elevators, and on or about June 4th or 5th further discussion was had between the two respecting the sale of all the elevators. At a meeting held on June 6th, the directors of the corporation took certain action looking toward the calling of a meeting of the stockholders for the purpose of submitting to them a proposal to liquidate and dissolve the corporation, but the record fails to make clear the exact nature of the action. Between June 7th and 12th, inclusive, the stockholders executed their written consent to the dissolution of the corporation, and at the same time they signed in counterpart written instruments designating Powell as the liquidating agent. On June 12th, the president and secretary of the corporation executed a certificate of stock ownership in the cor-

poration, specifying the number of issued and outstanding shares, the owners, and the amount owned by each. The certificate of stock ownership and the consent of the shareholders to the dissolution were filed in the office of the Secretary of State of Kansas on June 16th, and on the same day the Secretary issued a certificate of dissolution of the corporation. Notice of dissolution was published on June 21st and filed with the Secretary of State on June 23rd.

On June 16th, the date on which the certificate of stock ownership and the consent of the stockholders to the dissolution were filed in the office of the Secretary of State, the corporation executed conveyances of its properties to Powell. The deed conveying the elevator property in Wichita was to him individually, without any reference to his acting as liquidating agent. The several bills of sale conveyed the personal property to him as "agent for the former stockholders of" the corporation. By written contract reciting that it was made and entered into on June 23rd, the date on which the notice of publication of the dissolution was filed in the office of the Secretary of State, Powell agreed to sell the elevator properties to The Wichita Terminal Elevator Inc. Ross was president of the purchasing corporation and he signed the contract in that capacity. The sale price was $289,350, of which $25,000 was to be paid immediately and the balance upon delivery of conveyances and possession of the properties. On June 27th, conveyances were delivered and the purchase price paid in full. In the deed of conveyance to the terminal elevator property, Powell and his wife were the grantors; and in the bills of sale to the country elevators, Powell, designated as agent for the former stockholders of The Wichita Terminal Elevator Company, was the transferor. The check given for the purchase price was payable to L. H. Powell, agent, and was endorsed in like manner.

The Commissioner of Internal Revenue treated the transaction as a sale by the corporation, not by its stockholders. That treatment resulted in a deficiency in tax based upon capital gain to the corporation. On redetermination, the Tax Court sus-

tained the action of the Commissioner; and the proceeding is here on review.

■ The transaction as a whole was cast in the form of conveyances of the properties of the corporation to Powell, as a liquidating dividend, dissolution of the corporation, and conveyances of the properties to the ultimate purchaser. The formal documents were molded in that pattern. The naked legal title passed from the corporation to Powell, and from Powell to the ultimate purchaser. And Powell was designated or referred to as agent for the former stockholders of the corporation. But in a case of this kind involving questions of liability for income taxes, the form of the transaction is not necessarily conclusive. The formal written documents are not always inflexibly binding. Helvering v. F. R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226. Income taxes cannot be avoided by methods, devices, anticipatory arrangements, or contracts which merely give illfounded complexion to the reality of a transaction in its relation to tax liability. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Griffiths v. Helvering, Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319.

■ The corporation was effectively dissolved for ordinary purposes under state law. And in some instances, a corporation may distribute its assets among its shareholders as a liquidating dividend and not be subject to income tax on the gain when the property is subsequently sold by the former stockholders. Commissioner v. Falcon Co., 5 Cir., 127 F.2d 277. But in determining the question of tax liability, a transaction of that kind should be scrutinized with care. Tazewell Electric Light & Power Co. v. Strother, 4 Cir., 84 F.2d 327.

■ Congress committed to the Tax Court authority in a controversy of this kind to determine disputed questions of fact, and its findings of fact must stand on review if supported by substantial evidence. Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670. Moreover, it is the function of the Tax Court to draw inferences from the facts and circumstances, Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Wilmington Trust Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; and to choose between conflicting inferences, Wilmington Trust Co. v. Helvering, supra; Commissioner v. Scottish American Co., supra. Too, an inference of fact drawn by that court is not to be overturned on review if it is reasonable and has substantial support in the evidence. Commissioner v. Scottish American Co., supra; Commissioner v. Flowers, 326 U.S. 456; 66 S.Ct. 250, 90 L.Ed. 203.

■■ Here the Tax Court found that the sale and transfer of the elevator properties was made on behalf of the corporation. Petitioners denominate the finding as the ultimate conclusion of the Tax Court. It is not a conclusion. Though drawn as an inference from other facts and circumstances in the case, it is in substance a finding of fact. Looking beyond form and to substance, the Tax Court drew the inference of fact that for income tax purposes the sale and conveyance of the properties were in effect made on behalf of the corporation. Is the finding a reasonable one and is it supported by substantial evidence? Powell and members of his family owned a large part of the stock of the corporation, and he was its president and general manager. He desired to sell the properties. He and Ross conferred about a sale. Ross had in mind only the purchase of the property in Wichita, but he learned that it was Powell's desire to sell all of the elevators. Ross promptly examined the elevators located outside of Wichita, and within four or five days after the first conference, Powell and Ross discussed the matter again. Neither Powell nor Ross testified in the proceeding before the Tax Court and there was no direct evidence as to whether in the subsequent conference a definite agreement of sale was reached. But almost immediately after the second conference, steps were initiated to convey all of the proper-

ties of the corporation to Powell, and to dissolve the corporation. The several steps to that end followed in chronological order and with swiftness which seems to have significance. In addition, almost before the setting of the sun after the dissolution of the corporation became an accomplished reality under the law of the state, Powell entered into the contract for the sale of the properties, and only four days later the conveyances were delivered and the purchase price paid. The record fails to indicate that any consideration had been given to the liquidation of the corporation prior to the time of the conferences between Powell and Ross. But liquidation was begun promptly after the conferences held on June 4th or 5th. And the properties had been conveyed to Powell, the liquidation completed, and the properties conveyed to the ultimate purchaser within less than four weeks after Powell and Ross held their initial conference. Viewed rationally, the facts and circumstances as a whole reasonably lend themselves to the conclusion that from beginning to end the successive steps taken were merely integral parts of a unified operation having for its goal the sale and passing of title of the corporation through a conduit to the ultimate purchaser. We think the Tax Court acted within its authorized province in finding that for income tax purposes the sale and conveyance of the properties was made on behalf of the corporation. Meurer Steel Barrel Co. v. Commissioner, 3 Cir., 144 F.2d 282, certiorari denied, 324 U.S. 860, 65 S.Ct. 864, 89 L.Ed. 1417, rehearing denied, 325 U.S. 892, 65 S.Ct. 1182, 89 L. Ed. 2004. And where the sale of properties belonging to a corporation is effected in that manner and for that purpose, the gain accrued from the sale is taxable to the corporation. Commissioner v. Court Holding Co., supra.

The decision of the Tax Court is affirmed.

HUXMAN, Circuit Judge (concurring).

I concur in the conclusion of Judge BRATTON that the Tax Court was warranted in treating the transaction as a sale by the corporation, and therefore concur in his opinion. In addition to what Judge BRATTON has said, there are, however, some additional observations which influence me in reaching this conclusion.

A liquidating proceeding is a method of closing out a corporate business and distributing its net assets to the stockholders, the owners of the same. But such a distribution does not result in a liquidating dividend merely because it is made in a corporate liquidation proceeding. If the corporation in liquidation sells its assets, pays its debts, and distributes the net balance to the stockholders, it is chargeable with any profits from the sale.

We must look to the federal income tax law and the proper regulations promulgated thereunder to determine what constitutes a liquidating dividend for income tax purposes. Treasury Regulation 111, Sec. 29.22 (a)-20, in part provides that: "No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition." To constitute a liquidating dividend there must be a distribution of property in kind. Under this regulation the corporation could have transferred all of its assets in kind to its stockholders in liquidation and no income tax would have accrued against the corporation even though it were done for the express purpose of preventing the accrual of a tax. But apparently there were claims outstanding against the corporation which had to be paid from the proceeds of the sale, and thus only the remaining proceeds could be distributed to the stockholders. This did not constitute a liquidating dividend as defined by the regulation.

In addition to other facts and circumstances relied upon by the Tax Court with relation to the dealings between Powell and Ross, it relied upon the waiver of notice of the special meeting of the Board of Directors of June 6, 1944, and upon the resolutions adopted at that meeting in reaching its conclusion that the transaction was in fact a sale by the corporation and that Powell was appointed agent for the purpose of selling the corporate assets, paying its debts, and distributing the net assets to the stockholders. It is, however, true, as pointed out, that these proceedings

for some reason were not introduced in evidence and were therefor improperly considered by the Tax Court, and may not be urged here in support of its findings. But respondent's Exhibit A, dated June 10, 1944, and designating Powell the stockholders' liquidating agent to receive the corporate assets, points the same way. So far as material, it reads as follows:

"We, the undersigned, being stockholders of The Wichita Terminal Elevator Company, a corporation of Wichita, Kansas, in the process of dissolution, do hereby appoint, constitute, and designate L. H. Powell of Wichita, Kansas, our agent and attorney in fact for the purpose of acting for us in connection with the winding up of the affairs of the said The Wichita Terminal Elevator Company, a corporation in the process of dissolution, and we hereby authorize the said L. H. Powell to take and receive from the said corporation, deeds, bills of sale, and other instruments of conveyance, and transfer to him, individually, or to a nominee designated by him, for the purpose of converting said assets in cash, and with the authority:

"(1) To transfer, convey to, or vest in any purchaser of any real, personal, or mixed property so coming into the hands of said liquidating agent;

"(2) To sell, transfer, and convey upon such terms, at such prices, and under such conditions as said liquidating agent may determine advantageous, any and/or all of the real, personal, and mixed property coming into such liquidating agent's hands;

"(3) To pay any necessary expenses in connection with the winding up of the affairs of said dissolved corporation, including revenue stamps, recording fees, accounting fees, legal fees, and all other expenses as such liquidating agent, and to pay any valid claims against the dissolved corporation and collect and receive any claims due said corporation;

"(4) To, from time to time, make distribution to the stockholders of said corporation, in percentages that the number of shares held by each bears to the total of four thousand shares in said corporation."

Looking to the real intent and purpose of Exhibit A and considering it as a part of the plan of liquidation, the conclusion is justified that although Powell was designated liquidating agent for the stockholders, he was in fact liquidating agent for the corporation, with power to sell its assets, convert them into cash, pay its debts and liabilities, and deliver the net proceeds to the stockholders. It was the corporation that was being liquidated, and not the stockholders. When he was directed to collect claims due the corporation and pay all valid claims against it, he was acting in the interest of the corporation. In order to carry out the mandate to pay all claims against the corporation, he was authorized to sell its property which came into his possession, and in Paragraph 4 he was directed to make distribution to the stockholders. This can mean only when he had sold all the property and had paid from the proceeds of such sale all the debts and claims against the corporation, he was then to pay the net proceeds to the stockholders.

An analysis of Exhibit A emphasizes the statement in Judge Bratton's opinion that, considered in their entirety, all the steps taken were merely integral parts of a unified operation having for its goal the sale and passage of title of the assets of the corporation through a conduit, Powell, called liquidating agent for the stockholders, to the ultimate purchasers.

PHILLIPS, Circuit Judge (dissenting).

The Commissioner had found that the sale of the elevators was made by the Wichita Terminal Elevator Company,[1] and that the capital gain derived from such sale was income to the corporation. To overcome the presumption that such finding was correct, the petitioners introduced evidence which established these facts: Between June 7 and June 12, inclusive, all of the stockholders of the corporation duly executed certificates of stock ownership and written consent to dissolution of the corporation, in accordance with § 17-3603, 1945 Supp. Kan. G. S. 1935. On June 12, 1944, L. H. Powell, president, and C. P. Garretson, secretary of the corporation,

---

[1] Hereinafter called the corporation.

executed a certificate setting forth the names and addresses of the stockholders of the corporation and the number of shares held by each, and stating that such persons were the only holders of the capital stock of the corporation issued and outstanding. Such certificates and consent to dissolution were filed in the office of the Secretary of State of Kansas, on June 16, 1944. On that date, the Secretary of State issued a certificate of dissolution which was duly published and proof of such publication was filed in the office of the Secretary of State on June 23, 1944. Between June 7 and June 12, inclusive, all of the stockholders of the corporation duly executed a writing which recited that they, as stockholders of the corporation in the process of dissolution, appointed L. H. Powell as their agent and attorney in fact to take and receive from the corporation transfers by deeds, bills of sale and other instruments, the assets of the corporation, and to sell, transfer, and convey, upon such terms, at such prices, and under such conditions as he might determine advantageous, all of the assets of the corporation coming into his hands as such agent.

On June 16, 1944, the corporation executed and delivered to Powell a warranty deed conveying to Powell the terminal elevator at Wichita, Kansas, and bills of sale transferring to Powell, as agent of the stockholders of the corporation, the four country elevators. On June 23, 1944, Powell, as agent for the former stockholders of the corporation, and Wichita Terminal Elevator, Inc., entered into a contract for the sale of the terminal elevator and the four country elevators for $289,350. The contract provided for a cash payment of $25,000, and for the payment of the balance of the purchase price upon the delivery of proper conveyances and the possession of

the elevators. On June 27, 1944, Powell and Lucy T. Powell, his wife, executed and delivered to Wichita Terminal Elevator, Inc., a warranty deed conveying to it the terminal elevator at Wichita. On the same date, Powell executed and delivered to Wichita Terminal Elevator, Inc., bills of sale transferring to it the four country elevators.

The presumption of the correctness of the Commissioner's determination is one of law. It is not an inference of fact. It disappears when evidence sufficient to support a contrary finding has been introduced.[2]

When the petitioners introduced evidence of the transfer of the elevators to Powell, as agent for the stockholders of the corporation, the due dissolution of the corporation, and the sale and transfer of the elevators by Powell, as agent for the stockholders, to Wichita Terminal Elevator, Inc., they made out a prima facie case that the elevators were distributed in kind and in liquidation, to the stockholders, and by them sold to Wichita Terminal Elevator, Inc.

The Tax Court held that the burden was on petitioners to prove that the formal actions taken, namely, the transfer of the elevators to the stockholders, the dissolution of the corporation, the conveyance and transfers to Powell, and the sale and transfer of the elevators by Powell, as agent of the stockholders, to Wichita Terminal Elevator, Inc., were not in fact a cloak to cover an actual sale of the elevators by the corporation. I disagree with that holding.

When evidence had been introduced by petitioners sufficient to support a finding that the elevators were distributed to the stockholders in kind and in liquidation, that

2 Crude Oil Corporation of America v. Commissioner of Internal Revenue, 10 Cir., 161 F.2d 809; Hemphill Schools, Inc., v. Commissioner of Internal Revenue, 9 Cir., 137 F.2d 961, 964; Wiget v. Becker, 8 Cir., 84 F.2d 706, 708; Lawrence v. Commissioner of Internal Revenue, 9 Cir., 143 F.2d 456, 459; J. M. Perry & Co. v. Commissioner of Internal Revenue, 9 Cir., 120 F.2d 123, 124; E. Albrecht & Son v. Landy, 8 Cir., 114 F.2d 202, 206; Andrews v. Commissioner of Internal Revenue, 2 Cir., 135 F.2d 314, 319; Cory v. Commissioner of Internal Revenue, 3 Cir., 126 F.2d 689, 694; Manchester Board & Paper Co. v. Commissioner of Internal Revenue, 4 Cir., 89 F.2d 315, 317. Cf. Webre Steib Co. v. Commissioner of Internal Revenue, 324 U.S. 164, 170, 172, 65 S.Ct. 578, 89 L.Ed. 819.

the corporation was duly dissolved, and that the elevators were sold and transferred by the stockholders to Wichita Terminal Elevator, Inc., the proof of correctness of the Commissioner's determination disappeared, he could no longer rely on such presumption to support his determination, and the burden was upon him to support the correctness of his determination by evidence.[3]

For the foregoing reasons, I do not think we reach the question of whether the evidence introduced by the Commissioner was sufficient to support the finding of the Tax Court.

If in fact Powell, acting for the corporation, entered into an agreement, oral or in writing, with Ross, for the sale of the elevators by the corporation to Wichita Terminal Elevator, Inc., notwithstanding the formalities by which the elevators were distributed by the stockholders, and by them sold and transferred to Wichita Terminal Elevator, Inc., the sale for tax purposes would be a sale by the corporation.[4] However, it is my view that when the proper rule of burden of proof is applied, the evidence introduced by the Commissioner was insufficient to support a finding that the sale of the elevators was made by the corporation. A finding that the negotiations between Powell and Ross, prior to June 16, 1944, resulted in a firm agreement on the part of Powell, acting for the corporation for the sale of the elevators by the corporation, in my opinion, would be wholly conjectural. On the contrary, it seems to me the only reasonable inference that may be drawn from the evidence is that if Powell entered into any agreement with Ross, prior to June 23, 1944, it was to undertake to bring about a dissolution of the corporation, the distribution of the elevators to the stockholders of the corporation, and the sale of the elevators by the stockholders to Wichita Terminal Elevator, Inc.

Finally, it is my view that there was a distribution by the corporation of its assets to its stockholders in kind and in complete liquidation. The elevators were transferred by the corporation to its stockholders unconditionally. It was a distribution in kind and in liquidation. The fact that the stockholders, in their power of attorney to Powell, authorized and directed Powell to pay any outstanding debts of the corporation from the proceeds of the sale of the assets distributed to the stockholders would not operate to make the distribution not one in kind and in liquidation. When the corporation distributed its assets among its stockholders, the law imposed upon each stockholder the obligation to discharge any unpaid debts of the corporation up to the value of the assets he received.[5] The authorization and direction in the power of attorney was not to meet any condition or requirement imposed by the corporation when it distributed its assets to the stockholders, but rather to discharge an obligation imposed by law on the stockholders.

I would reverse and remand with directions to proceed further in accordance with the views herein expressed.

[3] Whitney v. Commissioner of Internal Revenue, 3 Cir., 73 F.2d 589, 591; Nichols v. Commissioner of Internal Revenue, 3 Cir., 44 F.2d 157, 159; Andrews v. Commissioner of Internal Revenue, 2 Cir., 135 F.2d 314, 318, 319; J. M. Perry & Co. v. Commissioner of Internal Revenue, 9 Cir., 120 F.2d 123, 124.

[4] Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981.

[5] Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138, 139.