IRVING MILLSTEIN AND PHYLLIS MILLSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Millstein v. Commissioner
Docket No. 25950-87
United States Tax Court
T.C. Memo 1994-14; 1994 Tax Ct. Memo LEXIS 14; 67 T.C.M. (CCH) 1956; January 11, 1994, Filed *14 Decision will be entered under Rule 155. Ps paid A, an architect, to design a single-family house on oceanfront property in East Hampton, New York. Thereafter, Ps learned that East Hampton had purchased the lot on one side of the property for public use and that a third party was building a motel on the lot on the other side of the property. After A informed Ps of the estimated cost of the house he had designed, Ps instructed A to stop work, and purchased another house instead. Held: Ps cannot deduct A's architectural fees as an abandonment loss incurred in connection with a transaction entered into for profit under sec. 165(c), I.R.C.; A's fees are a nondeductible personal loss. For petitioners Martin Berlin. For respondent George Soba. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Irving Millstein and Phyllis Millstein (petitioners) petitioned the Court for redetermination of respondent's determinations reflected in her notice of deficiency. Respondent determined a deficiency in petitioners' 1982 Federal income tax in the amount of $ 48,041 and an addition to tax of: (1) $ 4,500 under section 6659, [1] or (2) in the alternative, $ 3,750 under section 6661. *15 Respondent also determined that petitioners are liable for an increased rate of interest under section 6621(c) for a portion of the deficiency. [2]
Following concessions, [3] *16 the sole issue for decision is whether petitioners are entitled to deduct a $ 59,810.94 "abandonment loss" in 1982; the loss consists of architect's fees incurred in the construction of a single-family home. [4]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in New York, New York, at the time they filed their petition. During 1982, the year in issue, petitioners were husband and wife. They filed their 1982 Federal income tax return using the status "Married filing joint return". On their 1982 return, petitioners claimed a deduction of $ 62,870 characterized as "Abandoned Project Costs - Architects Fees re Investment Property". In 1969, petitioners, who resided in Long Beach, New York, bought a parcel of land adjacent to Montauk Highway in Napeague, New York (the parcel). The parcel consists of four acres fronting on the Atlantic Ocean in East Hampton, New York. At that time, the parcel was zoned for multiple-dwelling use. In 1971, petitioners purchased *17 a brownstone in Manhattan to use as their primary residence. Petitioners hired an architect, Robert A.M. Stern (Stern), to renovate it; this was the first work Stern performed for petitioners. Stern performed the renovation work from 1972 to 1979. Petitioners had Stern put white tile throughout their entire residential space in the brownstone; Phyllis Millstein (Mrs. Millstein) is particularly fond of white tile. Since September 1978, petitioners have resided in three floors of the brownstone. Petitioners retained their Long Beach home, which backed on a canal 40 feet wide. In 1980, petitioners commenced looking for a house in the the Hamptons, an area of Long Island, New York, that includes the community of East Hampton. During the summers of 1980 and 1981, petitioners looked at available houses; they were looking for an oceanfront home in a nice area. Leah Sklar (Sklar) is a real estate agent who showed petitioner such houses. In 1981, Sklar showed petitioners an oceanfront house in East Hampton (the Schacter house). Also in 1981, East Hampton changed the zoning rule applicable to the parcel from multiple dwelling to residential. In September 1981, petitioners entered *18 into an agreement with Stern for the design and construction of a single-family dwelling on the parcel. In response to Mrs. Millstein's request, Stern agreed that the home would have white tile throughout the entire house, with the exception of the garage. Petitioners applied for a variance to divide the parcel into two lots, an oceanfront lot and a lot fronting on Montauk Highway. A hearing on the variance application was held on January 19, 1982, and by decision dated February 2, 1982, the East Hampton Zoning Board of Appeals granted the variance subject to two conditions. [5]
When petitioners contracted *19 with Stern, petitioners believed that the land on each side of the parcel was privately owned. In January 1982, they learned that the construction of a motel was underway on the property adjoining their property to the east. In March 1982, Irving Millstein (Millstein) learned that East Hampton had purchased the lot adjoining the parcel to the west and that it planned to use the lot as a parking lot for public beach access. For these reasons, on March 15, 1982, petitioners asked Stern to stop work. Later the same day, Millstein spoke with Sklar and informed her that the parcel was between a lot on which a motel was being built and a lot owned by East Hampton. Millstein told her that he wanted to sell the parcel and buy either an oceanfront lot or an oceanfront house. He asked Sklar if the Schacter house was still available, and she said that it was. Sometime after March 15, 1982, petitioners decided to go forward with building a home on the parcel because they believed it was important to Stern. On April 13, 1982, Sklar told Millstein about an oceanfront lot; Millstein told her that he might build on the parcel, but was willing to look at other lots. On June 3, 1982, petitioners *20 met with Stern and received a cost estimate for building the home. At that point, because the cost estimate was high, petitioners instructed Stern to stop work. Petitioners did not incur additional fees to Stern after June 1982. On June 12 and June 19, 1982, Sklar showed petitioners the Schacter House. In July 1982, petitioners purchased the Schacter house for their personal use. Petitioners used the Schacter house as their summer home in 1982, 1983, and 1984. In 1985, they began renovating it, and rented another house to use for the 1985 summer. Petitioners installed white tile throughout the entire Schacter house. Petitioners have a strong affection for animals, and have lived with cats and dogs, usually several at a time, throughout their marriage. Petitioners keep their dogs on leashes. Petitioners favored white tile in their residences in part because of their pets. OPINION Section 165(a) generally allows a taxpayer to deduct any loss sustained in the taxable year to the extent it is not compensated for by insurance or otherwise. However, individuals may only deduct losses that were: (1) Incurred in a trade or business; (2) incurred in a transaction entered into *21 for profit, or (3) arising from storm, shipwreck, other casualty, or theft. Sec. 165(c). Petitioners claimed an "abandonment loss" on their 1982 Federal income tax return for amounts they paid to Stern to design a house for the parcel; they contend that these amounts were incurred in connection with a transaction entered into for profit. Respondent disagrees; she argues that the transaction was personal in nature. Petitioners bear the burden of disproving respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Based on our review of the record, we do not agree with petitioners that their transaction with Stern was profit motivated. Rather, the record reflects that petitioners contracted with Stern to design their personal residence. We note that petitioners did not call Mrs. Millstein to testify although she was instrumental in designing the home for the parcel. We can only assume that petitioners failed to call her as a witness because her testimony would have been unfavorable to them. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). *22 As early as 1980, petitioners manifested their desire to reside in an oceanfront home in the Hamptons. At that point, the parcel was zoned for multiple-dwelling use. Shortly after the zoning applicable to the parcel changed to single-family residential, petitioners contracted with Stern to design an oceanfront home for the parcel. The very same day that petitioners first spoke to Stern about stopping work, Millstein spoke with Sklar about selling the parcel and buying either an oceanfront lot or house. Petitioners then wavered for a few months between building the oceanfront home on the parcel or buying another oceanfront lot or house. Shortly after petitioners received a cost estimate from Stern and decided not to build a home on the parcel, they purchased an oceanfront home, also in the Hamptons, to use as their personal residence. The home Stern designed for the parcel reflected petitioners' unique tastes in a personal residence, including the white tile. Petitioners argue that they could not have planned to use the home as their personal residence because the location of the parcel between the ocean and a highway would have been inappropriate for their pets; we disagree. *23 Petitioners were comfortable residing near the ocean with their pets: the Schacter house fronts on the ocean, and a prior residence, their Long Beach home, backed on a 40-foot-wide canal. As for the highway, petitioners kept their dogs leashed, and petitioners were planning to build on the oceanfront portion of the parcel, not the portion adjoining the highway. In sum, although petitioners wavered between building their personal residence on the parcel and buying or building elsewhere, the record reflects that petitioners were consistent in their desire to reside in an oceanfront home with white tile, in the Hamptons. Personal expenses are not deductible. Sec. 262(a). Thus, we hold that petitioners are not entitled to a 1982 abandonment loss; petitioners commissioned Stern to design a residence for personal use, and did not enter into a transaction for profit. [6]
To reflect the foregoing, *24 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent determined that petitioners are liable for an increased rate of interest on $ 15,000, the portion of the deficiency attributable to petitioners' investment in White Rim Oil and Gas Associates (White Rim).↩
3. Petitioners concede that: (1) They may not deduct a loss in connection with their investment in White Rim; (2) they may not deduct certain interest expense; (3) they may deduct less of a loss with respect to certain rental income and expenses than they originally claimed; and (4) the portion of the underpayment resulting from the adjustment to their loss with respect to White Rim constitutes a substantial underpayment attributable to tax-motivated transactions under sec. 6621(c). Respondent concedes that petitioners are not liable for additions to tax under secs. 6659 and 6661 in connection with disallowed losses arising from petitioners' investment in White Rim.↩
4. Respondent disallowed a $ 62,870 abandonment loss that petitioners deducted on their 1982 return. On brief, petitioners conceded that $ 3,059.06 of this amount should have been capitalized, rather than deducted.↩
5. Petitioners inadvertently did not completely comply with one of the two conditions. Because petitioners only partially complied with the second condition of the 1982 zoning variance, they reapplied for the variance on Nov. 19, 1985. By resolution dated Aug. 5, 1986, the East Hampton Zoning Board of Appeals granted the variance subject to satisfaction of the remaining condition. Petitioners still own the parcel.↩
6. Because of our decision on this issue, we need not decide whether petitioners abandoned the plans in 1982, the year in issue.↩