Estate of Stanley Michalak, Deceased, Irene Michalak, Administratrix, and Irene Michalak v. Commissioner.
Estate of Michalak v. Commissioner
Docket No. 3453-63.
United States Tax Court
T.C. Memo 1969-2; 1969 Tax Ct. Memo LEXIS 295; 28 T.C.M. (CCH) 7; T.C.M. (RIA) 69002; January 6, 1969, filed Robert S. Lesher, 1700 Rand Bldg., Buffalo, N. Y., for the petitioners. John D. Steele Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1958
$386.37
1959
152.71
1960
325.01
Prior to his death, Stanley Michalak owned a one-third interest in a partnership called Cayuga Block and Builders Supply Company. The partnership did not file information returns for the years 1958 and 1959. On its timely filed 1960 return the partnership reported a loss of $4,244.24. As a result of an audit conducted in the latter part of 1961, subsequent to Stanley's death, the respondent determined that the partnership had income in the years 1958, 1959, and 1960 in the respective *296 amounts of $1,609.13, $694.13, and $226.68. The only issue for decision herein is whether the partnership did in fact have income for such years as determined by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. Stanley and Irene Michalak were husband and wife who resided in Cheektowaga, New York, at the time they filed their 1958 joint Federal income tax return and in Buffalo, New York, at the time they filed their 1959 and 1960 joint Federal income tax returns. The returns, prepared on the cash receipts and disbursements method of accounting, were timely filed with the district director of internal revenue at Buffalo, New York. Irene Michalak (herein called Irene) was appointed administratrix of the estate of Stanley Michalak (herein called Stanley), who died on April 26, 1961. Irene resided in Buffalo, New York, at the time the petition herein was filed. From 1945 until the date of his death, Stanley owned a one-third interest in Cayuga Block and Builders Supply Company (herein sometimes called the partnership). Bernard Piecznski and his brother, Zygfried Piecznski, each owned a one-third interest in the partnership. During *297 the years in issue the three men were also the owners of Cayuga Masonry Corporation (herein called Cayuga) and Bern-Stan-Zyg Development Corporation (herein called Bern-Stan-Zyg). Both of these were New York corporations whose principal business was construction. Stanley owned 20 percent of the shares in each corporation while Bernard and Zygfried each owned 40 percent of the shares of each corporation. Upon Stanley's death, Irene, as administratrix of his estate, succeeded to his onethird interest in the partnership and to his 20-percent interest in the two corporations. The partnership's only business for the years 1958 through 1960 was the purchase and resale of building material to Cayuga and Bern-Stan-Zyg. Because it had been in the building supply business in prior years, the partnership could buy material at a dealer's or a supplier's discount from the manufacturers. This meant it could purchase supplies at lower prices than could the corporations. The businesses of the partnership and the two corporations were conducted in the same office by the same personnel. For example, the partnership and the two corporations had the same bookkeeper and retained the same accountant, *298 who until his death in 1960 was James Caputi. The books of the partnership disclosed that the partnership had added a 10-percent mark-up on the resale of the material to the corporations. The books were in utter chaos as a result of Caputi's failure to keep them current. The partnership did not file information tax returns for either the taxable year 1958 or 1959. Nor did Stanley and Irene report any partnership income on their joint Federal income tax returns for such years. Caputi died in late 1960. He was replaced by Sigmund Gellman. After a cursory investigation of the books, Gellman discovered that no information return had been filed by the partnership for 1958 or 1959. However, at that time the 1960 partnership return had to be prepared immediately to be timely filed. Gellman, on the basis of a statement of income and expenses given to him by the bookkeeper, prepared the 1960 partnership return. The return reported a 9 loss in the amount of $4,244.24. The loss resulted from the deduction, as business expenses, of the entire amount of the salary paid the bookkeeper who worked for the two corporations as well as for the partnership, the entire amount of the employer's *299 payroll tax with respect to the bookkeeper's salary, and the entire amount of utility expenses for the office which was also used by the two corporations. On their 1960 joint Federal income tax return Stanley and Irene reported Stanley's distributive share of the reported partnership loss. As a result of the claimed loss, they received a refund of $189.71. In the latter part of 1961 an audit was made by a revenue agent of the partnership, Cayuga, and Bern-Stan-Zyg. The audit revealed the partnership's failure to file returns for the years 1958 and 1959 and that the loss reported on the 1960 partnership return would not have resulted if the various expenses had been apportioned among the partnership and the two corporations. Based on the information derived from the audit, the revenue agent prepared returns for the partnership for the years 1958 and 1959 and made adjustments with respect to the 1960 partnership return. In computing partnership income, the partnership was allowed as deductions only 10 percent of the following expenses: wages, payroll taxes and utilities. The two corporations were allowed the remaining 90 percent of the expenses. The agent also made other minor adjustments. *300 It was determnied that the partnership had income in the years 1958, 1959, and 1960 in the respective amounts of $4,827.41, $2,082.41, and $680. In his notice of deficiency the respondent determined that Stanley, as a one-third partner, was required to report as income his distributive share of partnership income which was $1,609.13 in 1958, $694.13 in 1959, and $226.68 in 1960. In addition, respondent also restored to Stanley's income the $1,414.75 which he had reported as his distributive share of the partnership loss for 1960. The partnership returns prepared by the revenue agent were signed by Bernard Piecznski and subsequently filed. Opinion The parties agree that Stanley was a one-third partner in Cayuga Block and Builders Supply Company. Consequently, the controversy is whether the partnership had any income for the taxable years 1958, 1959, and 1960. If it did have income, petitioner is liable for the income tax on Stanley's distributive share thereof under section 702, Internal Revenue Code of 1954. Respondent's determination is presumptively correct, and petitioners have the burden of proving it to be wrong. Welch v. Helvering, 290 U.S. 111 (1933). *301 We think they have failed to meet this burden. Respondent determined that the partnership had income for 1958, 1959, and 1960 in the respective amounts of $4,827.41, $2,082.41, and $680 by apportioning 90 percent of various business expenses between the two corporations which shared the facilities and the bookkeeper of the partnership. Delinquent partnership returns disclosing the amounts of partnership income were signed and filed, but petitioners contend that they are not bound by the returns filed by one of the surviving partners. Respondent, on the other hand, takes the position that it makes no difference whether petitioners are bound by the actions of a surviving partner because the only issue is whether the determination of the additional income is incorrect. The act of one of the partners in agreeing to it is relevant only as an indication that he thought the determination was proper. We agree with respondent. Petitioners' additional arguments, as we understand them, are: First, that the partnership did not have income for the years 1958 through 1960 because it was not authorized to sell at a price which would result in a gross profit; and, second, that respondent acted *302 arbitrarily in allocating only 10 percent of certain expenses to the partnership. The argument that the partnership did not have any income for the years 1958, 1959, and 1960 because it was operated as a mere conduit for the purpose of purchasing material which was to be resold to the two corporations at cost is not supported by the record. Nor has respondent acted arbitrarily in allocating the expenses on the basis of 10 percent to the partnership and 90 percent to the corporations. When the revenue agent made his audit, the financial records of these three entities were in such a state of confusion and chaos that certain records had to be reconstructed. It was under these difficult circumstances that the agent determined that the partnership was entitled to deduct only 10 percent of the expenses, not the 100 percent as claimed on the 1960 10 partnership return, and the corporations were entitled to deduct the remaining 90 percent. Aside from the uncorroborated testimony of Bernard Piecznski that while he "could not say the exact amount of time," he thought the bookkeeper spent 35 to 40 percent of her time working for the partnership, petitioner offered no evidence which tends *303 to show that respondent's determination is arbitrary or erroneous. The testimony of Bernard is insufficient to overcome the presumption of correctness attaching to respondent's determination, particularly in view of the fact that he was the partner who signed and filed the delinquent partnership returns, under penalty of perjury, which allocated only 10 percent of the expenses to the partnership. It is significant that petitioners failed to produce the books and records of the partnership and the corporations. The failure to do so causes us to infer that such evidence, if produced, would have been unfavorable to their position. Wichita Terminal Elevator Co., 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947). On this record we sustain respondent's determination. Decision will be entered for the respondent.