BILL R. FRISBIE AND KITTY S. FRISBIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frisbie v. Commissioner
Docket No. 12248-86.
United States Tax Court
T.C. Memo 1987-423; 1987 Tax Ct. Memo LEXIS 420; 54 T.C.M. (CCH) 271; T.C.M. (RIA) 87423; August 25, 1987. Bill R. Frisbie, pro se. Kimberly M. Bott, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d)(3) of the Internal Revenue Code of 1954 (redesignated section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. of the Tax Court Rules of Practice and Procedure.[1]
Respondent determined a deficiency of $ 1,466 in petitioners' 1982 Federal income tax. Respondent's notice of deficiency was based on the disallowance of a capital loss carryover (attributable to an alleged 1974 bad debt) and state taxes claimed in the respective amounts of $ 3,000 and $ 3,150 and disallowance of $ 2,368 of a total attorney fee claimed in the amount of $ 3,200. Petitioners filed a timely petition with this Court on May 5, 1986, and *422 designated the above adjustments as contested. Petitioners then asserted: "We disagree on the above changes because: the bad debt was allowed and based on a ruling by a higher official/appellate decision; (2) the attorney fees were paid and receipts confirmed; (3) state taxes were imposed and collected and payments made were confirmed." Some of the facts were stipulated and are so found. Included in the stipulation of facts were concessions by respondent that petitioners were allowed deductions for $ 1,350 of $ 3,150 state taxes previously disallowed and were entitled to deduct legal expenses (attorney fees) totaling $ 3,831.55 rather than the amount of $ 832 previously allowed. After respondent's concessions, the remaining issues for decision are: (1) whether petitioners can withdraw their petition filed with this Court; (2) whether petitioners are entitled to state taxes paid in excess of the amounts allowed by respondent; and (3) whether respondent correctly determined that petitions were not entitled to a capital loss carryover (attributable to an alleged 1974 bad debt) claimed on that return. Petitioners were residents of Sebastopol, California, at the time their petition *423 was filed. At the commencement of trial of the case on February 17, 1987, Bill R. Frisbie (petitioner) submitted a five-page Petition For Dismissal, which was filed as petitioners' motion to dismiss for lack of jurisdiction. Petitioner was advised that the Court would not rule on his motion until the trial was concluded and the case submitted. In his opening brief, petitioner again addressed his motion for dismissal by arguing: "This matter is not concerning an 'alleged claim of tax deficiency,' but is a guised, veiled attempt to punish by misusing the power of the agency. Petitioner did not realize until February 11, 1987, when during conversations with district counsel it was determined that respondant was not interested in the factual issues concerning this case, nor was respondent interested in the legal determinations, history, or prior agreement that had been entered into previously with/between petitioners and IRS. On February 11, 1987, it was stated that respondant's action was based on the latest auditor's determination to reject the three previous audits and that was the district counsel's sole basis for trial. It was immaterial or irrelevant to counsel as to what *424 prompted the auditor's decision. Based on that disclosure, it's evident that respondant has acted with abuse in his (auditor's) attempt to utilize this court's authority and respondant has placed an erroneous account of the facts before this court and has acted without probable cause in submitting his claim, and respondant does not honestly and reasonably believe that there were grounds for his action. District counsel and the court have been misled as has petitioner by respondant's (auditor) failure to be truthful and forthcoming. Respondant in his zeal has attempted to utilize sematics and deceit to provide a basis for a claim (of tax deficiency) (yet) prior audits, forms and terms utilized define capital losses as opposed to 'net operating losses' of 'bad debts' as they are now attempted to be defined by respondants." (Reproduced literally.)
In conclusion, petitioner requests that "this court determine it lacks jurisdiction based on the issues outlined in this petition to dismiss and that respondant [sic] and petitioner be allowed to litigate in the appropriate court the issues of breach of agreement and abuse of process." Petitioner has invoked the jurisdiction *425 of this Court by filing a timely petition in response to respondent's notice of deficiency. The record discloses that petitioner has cooperated with respondent's attorneys and other employees in preparing this case for trial. A stipulation of facts was executed and filed by the parties as required by Rule 91(a). Pursuant to that stipulation, respondent conceded that petitioner had substantiated and accordingly, was entitled to deductions for state taxes and legal expenses in excess of amounts previously determined as allowable. Now, for reasons not satisfactorily explained in this record, petitioner requests that we allow him to withdraw his petition and dismiss his case so that he and respondent can pursue further litigation in an unnamed court. This we cannot do. The jurisdiction of this Court is limited to that conferred upon it by statute. Estate of Rosenberg v. Commissioner,73 T.C. 1014, 1017-1018 (1980), appeal dismissed (2d Cir. 1981). Our jurisdiction to grant equitable relief is strictly limited. Hays Corp. v. Commissioner,40 T.C. 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964). We have previously rejected a taxpayer's *426 request we grant him relief by permitting the withdrawal of a petition without prejudice. Estate of Ming v. Commissioner,62 T.C. 519, 524 (1974); see also DeNicola v. Commissioner,T.C. Memo. 1984-479. Accordingly, petitioner's request that we allow him to withdraw his petition and dismiss his case must be denied. Petitioner furnished no evidence that he was entitled to more than $ 1,350 state taxes conceded by respondent as allowable deductions. In fact, petitioner admitted that a portion of the taxes claimed as deductions may have been paid in 1980 and 1981. Accordingly, respondent's determination of this issue is sustained. On his 1982 tax return, petitioner designated his occupation as "developer" and Mrs. Frisbie's occupation as "secretary." [2] The tax return was filed with the Fresno Service Center. On line 13, page 1 of the return, petitioner claimed a carryforward of a capital loss totaling $ 466,205.31, [3] which loss was reduced to $ 442,820.82 after subtracting wages and interest income. Petitioner explained on Schedule D of Form 1040, part V (Computation Of Post-1969 Capital Loss Carryovers from 1982 to 1983) that "The loss carryforward *427 was due to the fraudulent bad debt. Our method of computation was approved by a District Conferee as settlement." According to respondent, the Service Center mathematically corrected the return by disallowing all but $ 3,000 of the $ 466,205.31 loss since it was reported as a capital loss on Form 1040, Schedule D. We must decide whether respondent correctly disallowed the remaining $ 3,000 amount claimed as stemming from an alleged 1974 bad debt. [4]
*428 A copy of a Form 1045 (application for Tentative Refund) filed by petitioner in October 1975, with the Fresno Service Center reveals a net operating loss of $ 574,546 for the year 1974. Computation of decrease in tax entries for the preceding three years discloses in part: 1971
1972
1973
As last
After
As last
After
Determined
Carryback
Determined
Carryback
Adjusted gross
income before
adjustment for
carryback
(no entries)
$ 124,511 $ 124,511 $ (49,838)
(no entries)
Net operating
loss deduction
resulting
from carryback   ----   574,546 Balance
$ 124,511
$ (450,035)
Total tax liability
23,098 -0-
Revised Tax liability -0-
Decrease in
$ 23,098
tax
Although petitioner initially identified and reported his 1974 loss [5] as a net operating loss on Form 1045, he now vigorously contends that the loss incurred and claimed should be treated as a capital loss. Petitioner asserts his 1974 return was audited by a Santa Rosa, California, revenue agent (now retired). The loss determined by the agent was approved as a capital loss by a San Francisco appellate conferee. *429 [6] According to petitioner, he "was advised by the conferee that the filing of that 1045 Form would supply some needed time relief and it did eventually provide the necessary time for a working solution of the tax dispute between the parties. The 1045 Form supplied by the conferee had the words 'net operating loss' preprinted thereon * * * but * * * the time element was the key factor in determining the utilization of that form." Petitioner also testified that he provided the documentation necessary to support his loss as to amount and character "to five different agencies and on three or four occasions to Internal Revenue Agents, various agents of the Service." In essence, he argues that respondent now desires to renege on an agreement made by him and an appellate conferee 12 years ago that his "losses were 'capital,' not 'net operating loss'." *430 Respondent argues that petitioner failed to prove the nature of the bad debt incurred in 1974 and the amount of the carryover available in 1982. Respondent's copies of returns for many of the years prior to 1982 and particularly the years applicable to the Form 1045 filed have been destroyed. Petitioner alleged that he had copies of returns filed for years relating to the 1974 bad debt, as well as earlier and later years. He admitted that he had declined to furnish copies of these returns to respondent's attorneys and agents, even though requested. Furthermore, he did not have copies of these returns at trial and represented to the court that he was unwilling to supplement this record by producing copies of these returns. Petitioner agreed that he was unable to prove the nature of the carryforward loss or the amount claimed on the return and did not dispute that he has the burden of proving respondent's determination was incorrect. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We have held on previous occasions that "the failure of a party to introduce evidence within his possession * * * which, if true, would be favorable to him, gives rise to *431 the presumption that if produced it would be unfavorable." See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Accordingly, we must sustain respondent on this issue. [7]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated, and any "Rules" reference shall be deemed to refer to the Tax Court Rules of Practice and Procedure. ↩
2. Total gross income reported by petitioner and his wife in 1982 included $ 23,352.23 wages earned by Mrs. Frisbie and $ 32.26 interest income. ↩
3. There is no prior tax return or other evidence in the record detailing the original loss upon which this carryover loss is based. ↩
4. If the 1974 bad debt was a nonbusiness bad debt so as to receive short-term capital loss treatment, as claimed by petitioner, the excess of the bad debt over the amount currently allowed for capital loss purposes under section 1211(b), may be carried forward to future income years, subject to the limitations of section 1211(b), until absorbed in full. Section 1212(b). On the other hand, if the bad debt was a business bad debt (or a theft loss as argued by respondent at one point) and therefore part of a net operating loss, as contended by respondent, a loss occurring in 1974 must first be carried back to the years 1971, 1972 and 1973, and then carried forward to each of the five taxable years following the taxable year of the loss. Sec. 172(b)(1)(B). The carryforward period for loss deduction purposes would have expired prior to the 1982 year. ↩
5. We are unable, from this record, to provide a clear sequence of events which satisfactorily explain petitioner's large 1974 loss claimed on the Form 1045. Petitioner's documentary evidence was limited to "no change" examination letters for the years 1976 and 1977 and a "Correction to Arithmetic" notice for the year 1978 and which stated "AN ERROR WAS MADE IN FIGURING YOUR CAPITAL GAINS AND LOSSES ON SCHEDULE D." Petitioner's testimony of events which transpired 13-15 years ago at times conflicted with the summary of facts contained in respondent's trial memorandum, which was based on information previously given by petitioner to respondent's auditors and attorneys. As near as we can tell, it appears that petitioner and his partner were engaged somehow in the development of real estate as a result of business transactions entered into in 1972 and 1973 with Capital Planning & Associates (Capital Planning) of Novato, California. Losses resulted to petitioner when Capital Planning failed to repay substantial loans advanced by petitioner. Subsequently, several of the principals of Capital Planning were indicted in criminal fraud action taken by government authorities, which may have resulted in convictions in 1981 and 1982. It appears that petitioner and other investors lost substantial sums as a result of the activities of the principals of Capital Planning. ↩
6. Respondent's attorney alleged that the named San Francisco appellate conferee has been contacted, but "has no independent recollection of this case, nor did he keep any papers associated with the case." ↩
7. It is well settled that prior administrative determinations involving the same taxpayer do not preclude respondent from making a contrary determination for a different year. Coors v. Commissioner,60 T.C. 368, 406 (1973), affd. 519 F.2d 1280 (10th Cir. 1975). See also Tolotti v. Commissioner,T.C. Memo. 1987-13↩. Therefore, petitioner's assertion that he and respondent's employees agreed that the loss he incurred from Capital Planning transactions was a capital loss, is irrelevant.