EDGAR B. ROESCH, JR., AND BETSY T. ROESCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roesch v. Commissioner
Docket No. 36413-85.
United States Tax Court
T.C. Memo 1989-158; 1989 Tax Ct. Memo LEXIS 158; 57 T.C.M. (CCH) 64; T.C.M. (RIA) 89158; April 11, 1989. *158 Edgar B. Roesch, Jr., pro se. John C. McDougal, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency of $ 6,067.28 in petitioners' Federal income tax for the taxable year ended December 31, 1982. The sole issue for our determination is whether a shareholder's guarantee of the debt of an electing small business corporation under subchapter S of the Internal Revenue Code increases the shareholder's basis in his stock in the corporation. FINDINGS OF FACT Some of the facts of this case have been stipulated and are found accordingly. The stipulation of facts, with attached exhibits, are incorporated herein by this reference. Petitioner Edgar B. Roesch, Jr., and Betsy T. Roesch are husband and wife. The couple resided in Williamsburg, Virginia, at the time they filed their petition in this case. Petitioner Edgar Roesch (hereinafter individually referred to as "petitioner") timely filed an individual Federal income tax return for 1981. On this 1981 return, petitioner reported no dividend income. He did, however, report a negative taxable income of $ 31,359.14. This negative income amount *159 was tied to petitioner's claiming a loss from Service Metal Fabrications, Inc. ("SMFI"), an electing small business corporation from the date of its incorporation through September 30, 1981. [1]
Petitioners timely filed a joint Federal income tax return for 1982 on which they reported no dividend income. They did, however, claim a $ 31,359.14 loss carryforward from Edgar Roesch's 1981 return. In the notice of deficiency mailed to petitioners, respondent disallowed this entire $ 31,359.14 loss carryforward. [2]
On February 11, 1981, the Virginia State Corporation Commission issued a certificate of incorporation to SMFI. SMFI's incorporation represented the culmination of planning in the fall of 1980 by petitioner and Steven A. Turner ("Turner") to establish a precision sheet metal business in the tidewater region of Virginia. Petitioner and Turner were SMFI's sole stockholders, respectively owning *160 66.7 percent and 33.3 percent of company's outstanding shares. Petitioner acquired his 66.7 percent share of SMFI's stock for a cash investment of $ 20,000. In October of 1980, petitioner and Turner, in the name of SMFI, applied for a loan with Virginia National Bank (the "Bank"). As part of the loan application process, the two presented the Bank with a pro forma income statement and balance sheet anticipating SMFI's first year of operation. For its first 12 months of operation, SMFI's projected " pre-tax income" equalled negative $ 38,350. The Bank approved a loan in the amount of $ 425,000 to SMFI on November 19, 1980. In approving the loan, the Bank expected to look to SMFI's earnings as the loan's source of payment. Additionally, the loan was to be secured by the Bank's holding security interests in the corporation's accounts receivable, inventory, machinery and equipment; by the assignment of life insurance policies to the Bank; by a 90-percent guarantee of the Small Business Administration ("SBA"); and by the personal guarantees of petitioner and Turner. Virtually every time the Bank loaned money to a new corporation, the Bank followed a practice of having the loan *161 guaranteed by the shareholders of the corporation. On January 8, 1981, the SBA agreed to the 90-percent guarantee of the $ 425,000 loan. On March 27, 1981, petitioner and Turner executed personal guarantees for this same SMFI debt. Prior to guaranteeing the corporation's loan, petitioner and Turner submitted statements to the Bank showing their combined net worth to be $ 255,624. On March 27, 1981, the Bank made an initial disbursement under the loan in the amount of $ 178,518.62. The $ 178,518.62 disbursement went directly into SMFI's checking account, against which cashiers' checks were drawn payable to the corporation's machinery and equipment suppliers. Subsequent loan disbursements of $ 53,617.36 on May 6, 1981, and of $ 40,102.75 on June 3, 1981, were handled in the same way. SMFI's operations in its first fiscal year, ended October 31, 1981, showed a corporate net loss of $ 113,735.15, of which the parties stipulated petitioner's proportionate share to be $ 75,938. During this same fiscal period, petitioner directly advanced to SMFI $ 37,360 in loans. This $ 37,360 sum was the only corporate debt owed directly to petitioner. Payments on the note to the Bank have *162 all been made by SMFI. Petitioner has not yet been called upon to make any payments on his personal guarantee of the $ 425,000 loan. The books of SMFI show the loan payable to the bank, not to petitioner. OPINION Our recent opinion in , governs this case. In Leavitt, shareholders in VAFLA Corp. ("VAFLA"), an electing small business corporation under subchapter S of the Internal Revenue Code, guaranteed a loan issued by the Bank of Virginia to this electing corporation. At the time of the loan's processing, the Bank of Virginia was provided with a corporate income statement for VAFLA's first three months of operation showing a company a loss of $ 142,410.16. Moreover, VAFLA was having trouble meeting its cash flow requirements, and the company's liabilities exceeded its assets. The Bank of Virginia issued the loan to VAFLA only because of the financial strength of the corporation's guaranteeing shareholders. In spite of VAFLS's precarious financial position, the company made all payments of principal and interest on the loan. . *163 Neither VAFLA nor its guaranteeing shareholders reported any of the company's payments of the loan's principal or interest as dividends. . Presented with these facts in Leavitt, we held that, absent an economic outlay by the company's guaranteeing shareholders, the shareholders' guarantees of the loan did not increase their basis in their VAFLA stock. . Our holding in Leavitt is equally applicable to the instant case. At the time the Bank approved the $ 425,000 loan to SMFI, SMFI was expected to generate losses in its first months of operation. Moreover, the Bank's request that SMFI's shareholders guarantee the company's loan and additionally submit combined net worth statements was in keeping with the Bank's general procedure and denotes that, in approving the loan, the Bank sought solace in the financial strength of SMFI's guaranteeing shareholders. Furthermore, we point out, that, despite SMFI's projected financial weakness, petitioner has yet to be called upon to make any payments on his personal guarantee of the $ 425,000 loan. SMFI *164 has instead made all payments on the note. Additionally, as payments on the Bank's note were made in 1981 and 1982, petitioner reported no such payments as dividends. We see no significant factual distinctions between the present case and Leavitt. Consequently, we follow and apply Leavitt's reasoning and holding here. Petitioner cannot increase the basis of his SMFI stock by his mere guarantee of that corporation's $ 425,000 debt to the Bank. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. SMFI revoked its subchapter S election effective Nov. 1, 1981.↩
2. On this same notice, respondent calculated a 1981 investment credit carryforward for the petitioners' 1982 taxable year. No amounts tied to this investment credit carryforward calculation are in dispute.↩