DOUGLASS D. FEAR and JANICE H. FEAR, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fear v. Commissioner
Docket Nos. 21301-86; 21400-86; 21435-86; 24164-86; 24165-86; 24167-86; 24168-86.
United States Tax Court
T.C. Memo 1989-211; 1989 Tax Ct. Memo LEXIS 211; 57 T.C.M. (CCH) 306; T.C.M. (RIA) 89211; May 3, 1989. Charles D. Fox, III, and Richard L. Burger, for the petitioners. Deborah S. Merkel, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies and additions to tax in the following consolidated cases: Docket
Additions to Tax I.R.C. 1954 Secs.
Petitioner
No.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661(a)
Douglass D.
and Janice
H. Fear
21301-86
1979
$ 87.00   -
-
-
1980
8,489.00
-
-
-
1981
26,333.00
-
-
-
1982
16,927.00
-
-
1,731.00
1983
5,869.00
-
-
711.00  Samuel L.
and
Lorinda G.
Lionberger
21400-86
1981
55,732.00
-
-
-
1983
31,782.00
-
-
3,178.20
Lucian Y.
and June
B. Grove
24135-86
1981
28,919.00
-
-
0
1982
19,831.00
-
-
1,983.00
1983
9,869.00
-
-
987.00  James D. and
Pamela M.
Gacek
24164-86
1983
9,900.00
-
-
-
Frederick A.
and Judith
S. Gacek
24165-86
1983
10,293.55
-
-
-
Anthony
Gacek Trust
24167-86
1982
52,057.50
2,602.88
50% int. due on
5,207.75
$ 52,057.50
1983
2,529.00
126.45  50% int. due on
-
$ 2,529.00
Estate of
Anthony
Gacek
24168-86
1982
29,170.00
1,458.50
50% int. due on
2,917.00
$ 29,170.00  *213 The principal issue for decision is the deductibility by stockholders of their proportionate shares of losses of their electing small business corporation, VAFLA Corporation ("VAFLA" or "the corporation"). The matter involves the effect, under former section 1374 of the Internal Revenue Code, [2] of the stockholders' guarantee of bank loans to the corporation where, or to the extent that, the stockholders have not made any payments on their guarantees. Other issues will be set forth as they are considered hereinafter. These consolidated cases were submitted on the basis of a stipulation of facts. 1. Whether the disputed deductions of the petitioner-stockholders' allocable shares of VAFLA losses are precluded by former section 1374(c)(2). The individual petitioners, husband and wife in each case, were, except for Mr. and Mrs. Frederick A. Gacek, residents of Virginia when their petitions were filed. The Frederick A. Gaceks then resided in Nebraska. The wives are parties to these proceedings by virtue *214 of joint returns filed with their husbands. Anthony Gacek died March 16, 1982, a resident of Virginia and his estate is being administered in that state. Charles D. Fox, III, his executor as well as trustee of the Anthony Gacek Trust, resided in Virginia. VAFLA was incorporated on February 20, 1979, as a Virginia corporation. It was formed to acquire and operate the Six-Gun Amusement Park near Tampa, Florida. It was financially unsuccessful throughout its corporate existence, and was dissolved in 1984. The corporation's first taxable year was the seven-month short year ending on September 30, 1979. For that short year and the four subsequent September 30 fiscal years it had net operating losses and retained earnings deficits, as follows: Net Operating
Retained Earnings
Year
Loss
Deficit
1979
$ 265,566.47
$ 345,370.20  1980
482,181.22  1,093,383.56  1981
475,175.70  1,908,680.22  1982
383,895.97  2,639,714.76  1983
365,538.00  3,005,252.82  Anthony Gacek, together with petitioners Samuel L. Lionberger ("Lionberger") and Lucian Y. Grove ("Grove") were among the original stockholders of the corporation. Petitioner *215 Douglass Fear ("Fear") became a stockholder subsequent to incorporation. Petitioners Frederick A. Gacek and James D. Gacek are the sons of Anthony Gacek. As the sole beneficiaries under their father's will, they inherited his shares of stock in the corporation. The VAFLA stock owned by Anthony Gacek was valued as worthless for purposes of the Federal estate tax. No capital contributions were made to the corporation by the Estate of Anthony Gacek or his heirs, James D. Gacek and Frederick A. Gacek. No loans to the corporation were made by James D. Gacek or Frederick A. Gacek. The Estate of Anthony Gacek ("Estate") made a $ 5,000 loan to VAFLA in 1982, which was repaid in 1982. In 1982, the proportionate share of VAFLA's losses allocable to Anthony Gacek was $ 94,015.71. A portion of that amount, $ 19,318, was deducted on Anthony Gacek's individual income tax return for the period in 1982 ending with his death on March 16 of that year. The remaining $ 74,697 was deducted by the Estate on its Form 1041 for 1982. In the notice of deficiency, the Commissioner disallowed the $ 74,697 deduction taken by the Estate as its proportionate share of VAFLA's losses. The notice stated *216 that VAFLA losses were not deductible because the Estate's "adjusted basis in the VAFLA Corporation stock was zero in 1982" and its "adjusted basis in indebtedness of VAFLA Corporation was also zero in 1982." The Estate also took a capital gain deduction in 1982 (unrelated to any investment in VAFLA) in the amount of $ 39,200. The Commissioner disallowed that deduction "tentatively," indicating only that the deduction is allowable either to the petitioner-Trust (hereinafter described) or to the Estate, but not to both. On their respective joint income tax returns for 1983, James D. Gacek and Frederick A. Gacek each deducted their proportionate shares ($ 23,394 each) of the corporation's losses. In the notices of deficiency to the James D. Gaceks and to the Frederick A. Gaceks, the Commissioner disallowed those deductions, stating that "[i]t is determined that your adjusted basis in the VAFLA Corporation stock was zero on 9/30/83 and your adjusted basis in indebtedness of VAFLA Corporation was also zero in 1983. Accordingly, the loss is not allowed and your taxable income is increased $ 23,394.00 in 1983." Petitioners Douglass D. and Janice H. Fear deducted the husband's proportionate *217 share of VAFLA's losses on their income tax returns as follows: Year
Deduction
1979
$ 13,808
1980
$ 29,921
1981
$ 52,657
1982
$ 49,211
1983
$ 24,491
A number of the adjustments giving rise to the deficiencies determined against the Fears are not in controversy. There remains in issue merely the claimed deductions of the proportionate share of the VAFLA net operating losses for the years 1980-1983. The Commissioner limited the amount of the deduction for VAFLA's 1980 losses to $ 16,192 [3] and disallowed all other deductions for such losses in 1981, 1982, and 1983. The Commissioner stated in the notice of deficiency that "[i]t is determined that your adjusted basis in VAFLA Corporation stock was $ 16,192.00 on 9/30/80 and zero on 9/30/81, 9/30/82 and 9/30/83 and your adjusted basis in indebtedness of VAFLA Corporation was zero in each of the years ending 9/30/80 through 9/30/83. Therefore, the losses claimed are disallowed." *218 Only the years 1981 and 1983 are involved in respect of petitioners Samuel L. and Lorinda G. Lionberger. They deducted the husband's proportionate share of VAFLA's losses on their income tax returns as follows: Year
Deduction
1981
$ 175,034.00
1983
$ 100,523.00
In the notice of deficiency to the Lionbergers, the Commissioner allowed a deduction for VAFLA losses of $ 79,000 for 1981 and $ 33,000 for 1983. He stated that the Lionbergers' "adjusted basis in the VAFLA Corporation stock was zero on 9/30/81 and 9/30/83 and * * * [the Lionbergers'] adjusted basis in indebtedness of VAFLA Corporation is $ 79,000 in 1981 and $ 33,000 in 1983." The parties have stipulated that "exclusive of any guaranty amount," Lionberger's adjusted basis in the stock and indebtedness of the corporation to him was $ 79,000 in 1981 and $ 33,000 in 1983. Petitioners Lucian Y. and June B. Grove deducted the husband's proportionate share of VAFLA's losses on their income tax returns as follows: Year
Deduction
1981
$ 42,900.00
1982
$ 39,663.00
1983
$ 19,739.00
Exclusive of any "guaranty amount," Grove's adjusted basis in VAFLA stock and its indebtedness *219 to him was zero in each of the years 1981, 1982, and 1983. In the notice of deficiency, the Commissioner disallowed all VAFLA losses taken by the Groves for tax years 1981 through 1983. Petitioners rely upon former section 1374 of the Code to justify their claim to the deduction of their respective allocable share of VAFLA's losses. Former section 1374 provides: [4]
SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. *220 (a) GENERAL RULE. -- A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. * * * (c) DETERMINATION OF SHAREHOLDER'S PORTION. -- (1) IN GENERAL. -- For purposes of this section, a shareholder's portion of the net operating loss of an electing small business corporation is his pro rata share of the corporation's net operating loss * * *. (2) LIMITATION. -- A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of -- (A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation, * * * and (B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation * * *. Petitioners' claim to deductions of proportionate shares of VAFLA's losses under former section 1374 rests upon bank loans to VAFLA, with respect to which, as detailed *221 below, each male petitioner gave his guarantee but has not made any payments on such guarantee. (In the Fear case, there is also a question whether petitioner Fear even gave any such guarantee.) These loans were made by five banks at different times. To the extent necessary for this opinion they are summarized below. (a) Bank of Virginia. On or before September 30, 1979, VAFLA borrowed $ 300,000 from the Bank of Virginia. In August of that year, seven of VAFLA stockholders had signed guarantee agreements whereby they agreed to be jointly and severally liable for all indebtedness of the corporation to the Bank of Virginia. Among those seven were petitioner Grove and Anthony Gacek. Such guarantees served as the basis for deductions claimed in the Grove case, the Estate of Anthony Gacek case (in part), the James D. Gacek case, the Frederick A. Gacek case, and the Fear case (assuming that petitioner Fear in fact gave his guarantee to the Bank of Virginia). At the time the loan was made, VAFLA's liabilities exceeded its assets, virtually all of its assets had been put up as security for a purchase money indebtedness of approximately $ 1,000,000, and it *222 had so little cash available that it could not meet its cash flow requirements. The bank would not have made the loan except for the guarantees of the stockholders, and it looked to them for repayment. One of the seven stockholders who signed the guarantee agreement was Daniel Leavitt. He similarly had not made any payments on his guarantee, and had similarly claimed deductions based on VAFLA's losses. His case was litigated in Estate of Leavitt v. Commissioner,90 T.C. 206 (1988). After an exhaustive consideration of the problem, reflected in a majority opinion, a concurring opinion, two separate concurring votes, and a lengthy dissenting opinion, this Court held that the claimed deductions were not allowable under former section 1374. Petitioners herein seek to reargue the Leavitt case, and ask us to reconsider it. This Court has already followed Leavitt in two cases. Roesch, Jr. v. Commissioner,T.C. Memo. 1989-158; Erwin III v. Commissioner,T.C. Memo. 1989-80. We are not inclined to revisit the issue. We hold that Leavitt precludes any deductions based upon the guarantees given in connection with the $ 300,000 *223 loan by the Bank of Virginia. There is an independent ground for denying the deduction in the Fear case, because of our conclusion that Fear failed to establish that he had joined in such guarantee at all. In the first place, the parties stipulated that seven specifically identified stockholders signed guarantee agreements, and Fear was not one of the seven. Although the Government's original answer to Fear's petition admitted that he had guaranteed the Bank of Virginia loan, a motion to file an amended answer was granted in which it denied the allegation in the petition. It would seem that a revenue agent had merely assumed (for some reason undisclosed in this record) that such a guarantee was given, and that his assumption was stated as fact in his report which found its way into the original answer. But when respondent's counsel began to prepare for trial, it was discovered that such assumption was unfounded and hence respondent submitted the amended answer. Petitioners thereupon filed a reply to the amended answer to which they attached the revenue agent's report as proof that Fear had given the questioned guarantee. However, no allegation or proof in any reply was *224 appropriate, since the amended answer contained no affirmative allegation whatever that could call for a response. Petitioners submitted no "other proof" or testimony whatever that Fear had given a guarantee. We have examined the revenue agent's report and have concluded in the circumstances that it constitutes neither an admission that is conclusively binding upon the Government nor proof of the underlying fact. Indeed, at the hearing before Judge Clapp on the Government's motion to file its amended answer, the following colloquy occurred between Judge Clapp and petitioners' counsel: THE COURT: As I understand it there was a guarantee but they now say that Mr. Fear did not sign the guarantee. Is that correct? MR. BURGER: That's their position. THE COURT: Did he sign it or didn't he? MR. BURGER: I don't believe he did, Your Honor. The burden of proof in respect of the allegations in the petition still remained on the petitioners and it certainly has not been carried by reliance on the revenue agent's report, particularly when direct documentary evidence or the sworn testimony of petitioner himself could have been presented. We cannot assume that such evidence, not shown *225 to have been unavailable, would have been favorable to petitioners. In fact, the contrary is true. See Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In view of our conclusion that petitioners had failed to establish that Fear was a guarantor, this issue must be decided against them wholly apart from the application of former section 1374(c)(2). (b) Loans to VAFIA by other banks. Loans were made to the corporation by four other banks. Petitioner Lionberger along with other stockholders (not necessarily the same ones in each instance) guaranteed the repayment of such loans (by the four banks). In the case of only one such bank, Anthony Gacek and the Estate of Anthony Gacek were among the guarantors. No other petitioners were involved as guarantors in connection with the loans made by any of these four banks. The loans thus made by these four banks are summarized below. (i) United Virginia Bank. In 1979, petitioner Lionberger and three other VAFLA stockholders agreed to be jointly and severally liable for indebtedness of the corporation to United Virginia Bank. The bank extended a $ 150,000 *226 line of credit to the corporation, and VAFLA borrowed a total of $ 147,000 against that line of credit. The bank would not have considered granting the loan "without outside support or guarantors." It looked to the guarantors as the primary source of repayment. (ii) Colonial American National Bank. In 1980, petitioner Lionberger and other stockholders signed guarantee agreements whereby they agreed to be jointly and severally liable for the indebtedness of the corporation to Colonial American National Bank. From 1980 to 1983, the bank made loans to the corporation as follows: March 18, 1980
$ 72,998
September 29, 1980
35,000
January 12, 1981
40,000
November 13, 1981
46,000
January 5, 1983
50,000
These loans were made primarily on the financial strength of the guarantors. The bank would not otherwise have made the loans. (iii) First National Exchange Bank. From 1979 to 1981, the First National Exchange Bank made loans to the corporation as follows: October 10, 1979
$ 100,000
November 19, 1979
75,000
October 21, 1981
175,000
November 2, 1981
25,000
The notes given in respect of these loans were consolidated on *227 October 12, 1983, in a new note of $ 304,675.90. Petitioner Lionberger and four other stockholders guaranteed all of these loans. In addition, Anthony Gacek guaranteed the two 1981 notes, and his estate guaranteed the 1983 consolidation note. The purpose of the loans was to fund existing and anticipated operating deficits of the corporation. When the loans were made, virtually all the assets of the corporation continued to remain encumbered as collateral to a purchase money obligation. The bank's loan officer realized that the corporation was insolvent, and the bank would not have considered making the loans without outside support or guarantors. It looked to the guarantor-shareholders as the primary obligors. (iv) First and Merchants National Bank (now Sovran Bank). This bank made loans to Charles D. Fox, III, a stockholder as follows: December 4, 1979
$ 55,000
June 30, 1980
35,000
March 2, 1981
45,000
February 18, 1982
35,000
September 22, 1982
25,000
November 3, 1983
50,000
The loans were guaranteed by petitioner Lionberger and another stockholder to $ 100,000. The borrowed funds were "advanced" to the corporation. As in the case of *228 the loan made by the bank of Virginia, we hold that neither Lionberger nor the Estate of Anthony Gacek is entitled to deductions for VAFLA losses to the extent that the claim to such deductions rests upon any unpaid guarantee with respect to any of the loans made by the four banks. The Court's decision in Leavitt is equally controlling here. And we do not agree with the contention that a different result should be reached in the Lionberger and Estate of Anthony Gacek cases. It is argued that Lionberger and Anthony Gacek "were much more involved in the financial affairs of VAFLA Corporation than were the shareholders in Leavitt," Leavitt," that Lionberger was allegedly one of the principal officers of the corporation, and stress is placed upon the amount of the corporation's bank loans guaranteed by Lionberger and Anthony Gacek. These considerations do not, in our view, render Leavitt inapplicable to the Lionberger and Estate of Anthony Gacek cases to the extent that deductions of the corporation's losses were claimed on the basis of the guarantees given by Lionberger and Anthony Gacek. A further question remains in the Estate case, however, in respect *229 of corporate losses that could be allocated to loans made to the corporation by Anthony Gacek. He in fact had $ 35,181 in unused basis on the date of his death attributable to actual loans made by him to the corporation. However, his proportionate share of the corporation's losses for the entire year 1982 was $ 94,015.71, and $ 19,318 thereof was deducted on the short-year return filed on his behalf for the period ending with his death on March 16, 1982. Thus, after applying the $ 19,318 loss against the $ 35,181 basis in corporate indebtedness to him, there remained $ 15,863 of unused basis as of the date of death. However, there is no proof that as of the date of death, the indebtedness had any actual value at all, and, in the circumstances, the Estate must be treated as having received that asset with a basis of zero. It certainly did not take over the basis of the decedent. The Estate also argues that an $ 84,500 loan to VAFLA in 1982 by the Trust should be treated as a loan to VAFLA by the Estate since the beneficiaries are the same. The Estate and the Trust are separate entities; the acts of one do not inure to the benefit or redound to the detriment of the other. Only *230 an economic outlay by the Estate itself would give rise to basis in indebtedness of the corporation to the Estate. Accordingly, there is no justification on this record for disapproving any denial of deduction to the Estate of any of the corporation's 1982 loss in accord with former section 1374(c)(2). In the cases of James D. and Frederick A. Gacek, the application of former section 1374(c)(2) is particularly called for. They themselves made no investment of any kind in the corporation. Their inherited interests in VAFLA, whether in stock or indebtedness or both, obviously had a basis of zero in their hands. Such interests could not possibly support any deduction of any portion of the corporate losses. 2. Whether the Anthony Gacek Trust is entitled to a deduction pursuant to section 661(a)(2) for amounts paid to the Estate of Anthony Gacek in 1982. On its return for 1982, the Trust deducted $ 114,970 as an income distribution deduction pursuant to section 661(a)(2). The Commissioner disallowed the entire deduction not only "because it has been determined that the Estate of Anthony Gacek is not a proper beneficiary," but also because "the amounts paid have not been identified. *231 " We sustain the Commissioner in part. The record in respect of this item is highly confusing. And petitioner, upon whom the burden of proof rests, has not even pointed to any facts in the record convincingly establishing that the Trust in fact paid or distributed a total of $ 114,970 to the Estate in 1982. Instead, all that we have clearly before us in this connection is a stipulation of the parties to the effect that the Estate "received $ 34,200 from the Anthony Gacek Trust in 1982," and that "[t]hree of the checks written in 1982, totalling $ 3,000, are designated as loans." Thus, the $ 34,200 paid by the Trust to the Estate in 1982 must be reduced by the $ 3,000 in loans. The word "loan" presumes an obligation to return what is lent, and a loan can hardly be classified as a distribution. At most, therefore, the Trust's deduction could not exceed $ 31,200, if that distribution satisfied the requirement of section 661(a) that it was "properly paid" in 1982. Relevant provisions of section 661(a) are set forth in the margin. [5]
*232 The Trust was established by Anthony Gacek on February 25, 1981. He reserved to himself, the right to income during his lifetime as well as the right to withdraw corpus and the right to alter or revoke the entire trust agreement. Upon his death, the Trust Agreement contained the following provision for administration and distribution of the Trust Fund: (A) The Trust Fund shall be divided into equal shares so that there will be one (1) share for each child of the Grantor who is living at that time and one (1) share to the then living issue of each child of the Grantor who at that time may be deceased but represented by issue. It is the intention of the Grantor to provide not only for his children who are now in being, Frederick A. Gacek and James D. Gacek as well as any child or children who may be borne in the future. (B) Such shares shall be administered and distributed as follows: (1) The Trustee, in his sole discretion, shall pay out to the then living issue his share. If the person does not survive the death of the Grantor, then the shares shall be divided and distributed per stirpes among the then living issue of each child of the Grantor who at the time of the *233 Grantor's death is deceased but represented by issue, subject to the provision herein contained with respect to the retention by the Trustee of the shares of persons under twenty-one (21) years of age. [Emphasis supplied.] Plainly, the foregoing provisions of the Trust Agreement give the Trustee the sole discretion when to make payments or distributions to the beneficiaries and permit him to accumulate income rather than to distribute it as it is currently received. The Trust is thus what is known as a "complex trust." The Government argues that the Trust Agreement makes no provision for distributions to the Estate, and that any funds turned over to the Estate would not be "properly paid * * * or required to be distributed" to the Estate. Petitioner, however relies upon a stipulation of the parties that the trustee had the consent of James and Frederick Gacek (beneficiaries of the Trust) to make the payments to the Estate in 1982. And it further relies upon Article Six of the Trust Agreement which grants the trustee "all the powers of fiduciaries as set forth in [section] 64.1-57 of the Code of Virginia and all of said powers as enumerated *234 therein are hereby incorporated and made a part of this instrument, it being the Grantor's intention to confer upon the Trustee the broadest and amplest powers, the foregoing powers being by way of illustration and not by way of limitation." Although the matter may not be free from doubt, it is our best judgment that a fair reading of the language of Article Six justifies the conclusion that the distribution of $ 31,200 to the Estate was authorized by the Trust Agreement. The $ 31,200 accordingly was "properly paid" by the Trust to the Estate in 1982, and is therefore deductible by the Trust. 3. The $ 39,200 capital gain deduction. One final matter remains to be disposed of in respect of the Trust and the Estate, namely, the $ 39,200 capital gain deduction taken by the Estate in 1982 which was disallowed by the Commissioner and which the Government concedes should be allowed either to the Trust or to the Estate, but not to both. Ordinarily, where the governing instrument does not provide for the allocation of different classes of income, each beneficiary is treated as having received a proportionate share of each item of income constituting the Trust's distributable net *235 income. Sec. 1.661(b)-1), Income Tax Regs., sets forth a formula for such allocation. However, what we have here is more complicated in view of the wholly unsatisfactory stipulation of the parties. According to that stipulation, we have found a distribution of only $ 31,200, and we have no way of determining whether any portion of that $ 31,200 represented any capital gain. Thus, we cannot tell whether any of the Trust's 1982 capital gain upon which the $ 39,200 deduction was based entered into the computation of the Trust's distributable net income pursuant to section 643(a). For aught we know, the foregoing capital gain may not have been distributed at all. In short, we are faced with a mess. The situation seems to call for a practical solution. Since the parties appear to be in agreement that the capital gain deduction is allowable either to the Trust or to the Estate and since the beneficiaries of both are essentially the same, we hold that the deduction may properly be taken by the Trust and not by the Estate. 4. Section 6661(a) additions to tax. The Commissioner determined additions to tax under section 6661(a) in the amounts set forth at pages 2-3, supra, against *236 the Fears for 1982 and 1983, against the Lionbergers for 1983, against the Groves for 1982 and 1983, against the Trust for 1982, and against the Estate for 1983. Section 6661(a) calls for an addition to income tax in an amount equal to 25 percent of an understatement of tax liability for each year if, in accord with section 6661(b)(1)(A), the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. The propriety and amount of the section 6661(a) additions to tax, if any, will be determined automatically as to each year in each case in accordance with the results of the computations to be made under Rule 155. 5. Section 6653(a)(1) and (2) [6] additions to tax. The additions in the case of the Trust alone remain in controversy since the Government has conceded that the only other such additions, those against the Estate, were not warranted. Subsection (a)(1) imposes an addition of 5 percent of an underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, and (a)(2) calls *237 for an addition of 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard referred to in (a)(1). The Commissioner's determination of negligence or intentional disregard of rules and regulations is prima facie correct with the burden of proof to the contrary on the petitioner. Bixby v. Commissioner,58 T.C. 757 (1972). Thus the Trust must show that it acted prudently and exercised due care in ascertaining the amount of the distributions to the Estate in 1982 before taking the $ 114,970 income distribution deduction on its 1982 income tax return. In 1982, payments to the Estate clearly proved in the record totaled only $ 34,200, of which $ 3,000 must be considered as loans rather than distributions. To the extent that the record discloses checks submitted in support of the claimed distributions, such checks were signed by the trustee, Charles D. Fox, III, who was also the executor. The Trust has failed to offer any evidence to show that efforts were made to insure the accuracy of the deduction. Clearly, the trustee had a duty to know the amounts distributed to the Estate and to insure *238 that the Trust's income tax return accurately reflected those amounts. We therefore sustain the determination of additions for negligence for the tax year 1982. The additions to tax for negligence for 1983 must fail due to the Government's concession of the understatement upon which they are based. To reflect the conclusions reached in this opinion as well as concessions in the pleadings, or any adjustments not contested by assignments of error in the petitions supported by accompanying allegations of fact, or any concessions on brief or otherwise, and in order that decisions in all of these consolidated cases may be entered at the same time, Decisions will be entered under Rule 155.
Footnotes
1. The following cases were consolidated for purposes of trial, briefing and opinion: Samuel L. Lionberger, Jr., and Lorinda G. Lionberger, docket No. 21400-86; Lucian Y. Grove and June B. Grove, docket No. 21435-86; James D. Gacek and Pamela M. Gacek, docket No. 24164-86; Frederick A. Gacek and Judith S. Gacek, docket No. 24165-86; Anthony Gacek Trust, Charles D. Fox, III, Trustee, docket No. 24167-86; Estate of Anthony Gacek, Deceased, Charles D. Fox, III, Executor, docket No. 24168-86.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.↩
3. The $ 13,808 loss deducted by the Fears on their 1979 return without challenge by the Internal Revenue Service and the $ 16,192 loss allowed for 1980 add up to precisely $ 30,000, representing what was paid by petitioner Fear for his VAFLA stock, which could properly support deductions for losses up to that amount. Moreover, it has been stipulated by the parties that Fear's adjusted basis in VAFLA stock was $ 16,192 in 1980 and zero in the following years, and that his adjusted bases in its indebtedness to him in every year 1980-1983 was zero.↩
4. These provisions were revised and redesignated as section 1366 by the subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669. The limitations in former section 1374(c)(2) now appear in new section 1366(d)(1). Although the new provisions were intended to govern for years beginning subsequent to December 31, 1982, it is not clear whether such starting year was intended to refer to the tax year of the stockholders or the tax year of the subchapter S corporation. See Pub. L. 97-354, sec. 6. The corporation's last year here involved began on October 1, 1982. On the other hand, to the extent that the deficiencies related to the stockholders, the latest year was 1983. In any event, although the language of former section 1374 was changed in the revised provisions of the new section 1366, there was no change of substance that would affect petitioners herein, and the parties have treated former section 1374↩ as governing for all the years involved.
5. SEC. 661. DEDUCTION FOR ESTATES AND TRUSTS ACCUMULATING INCOME OR DISTRIBUTING CORPUS. (a) Deduction. - In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust * * * the sum of - (1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income for such taxable year); and (2) any other amounts properly paid or credited or required to be distributed for such taxable year; but such deduction shall not exceed the distributable net income of the estate or trust.↩
6. These additions, as modified, now appear in section 6653(a)(1)(A) and (B).↩